**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-060**

**Filing Date: April 24, 2017**

**Docket No. 34,826**

**UNIFIED CONTRACTOR, INC.,**

      **Plaintiff/Counterdefendant-Appellant,**

**v.**

**ALBUQUERQUE HOUSING
AUTHORITY, a political subdivision,**

      **Defendant/Counterclaimant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Valerie A. Huling, District Judge**

Calvert Menicucci, P.C.
Sean R. Calvert
Albuquerque, NM

for Appellant

City of Albuquerque
Jessica M. Hernandez, City Attorney
John E. DuBois, Assistant City Attorney
Kevin A. Morrow, Assistant City Attorney
Albuquerque, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

**{1}**   This litigation and appeal result from a contractual dispute between Appellant Unified Contractor, Inc. (Unified) and Appellee Albuquerque Housing Authority (AHA). Unified appeals from the district court's ruling that both parties breached the contract (the Contract) between them and that both parties were liable for damages.

**{2}**   In its letter decision, the district court made various factual findings and legal

conclusions. It also instructed the parties to submit requested findings of fact and conclusions of law within fourteen days. Neither party timely submitted findings of fact and conclusions of law.

**{3}** Unified characterizes several of its appellate arguments as either questions of law or mixed questions of law and fact. As discussed in detail below, to the extent that Unified's appellate arguments simply re-purpose questions of fact as questions of law, they are not well-taken.

**{4}** Unified does, however, raise legal arguments related to (1) its entitlement to notice of deficient performance and the opportunity to cure such deficient performance (notice and opportunity to cure) under the Contract and general principles of contract law, (2) the district court's decision to allow AHA to raise grounds for termination of the Contract other than those articulated as the basis for termination prior to trial, (3) the district court's method of calculating damages, and (4) the district court's refusal to consider Unified's motion for reconsideration. With the exception of Unified's argument as to the district court's method of calculating damages, these arguments lack merit. As to the calculation of damages, we adopt and apply the "contract price limitation rule" to the facts of this case; a decision requiring that we reverse the district court's judgment in favor of AHA in the amount of $33,281.37 and remand to the district court for entry of a final judgment in favor of AHA in the reduced amount of $22,257.34.

**{5}** Finally, Unified argues that it is entitled to statutory interest pursuant to the Prompt Payment Act. NMSA 1978, §§ 57-28-1 to -11 (2001, as amended through 2007). For the reasons discussed herein, we disagree. We therefore affirm in part, reverse in part, and remand to the district court for entry of a final judgment consistent with this opinion.

**BACKGROUND**

**The Contract**

**{6}** Unified submitted a bid in response to AHA's invitation for bids number B13001 (IFB B13001). IFB B13001 called for various construction services at four residential properties owned by AHA. The physical addresses of the properties in Albuquerque are 514 Morris NE, 716 Morris NE, 903 Nakomis NE, and 2905 Chelwood NE.

**{7}** Section 2.0 of IFB B13001 outlined the scope of work and technical specifications for the project. Subsection 2.3 provided that bidders could propose to substitute for products specified in IFB B13001 so long as the substitute product was "substantially equivalent or exceeding to the product[] identified." Subsection 2.4.1.5 required the bidder to "[p]aint [the] entire exterior of [each] building with one coat of [a]crylic base primer and one coat of elastomeric coating." Subsection 2.4.6.1.2.8 defined elastomeric coating by reference to "El Rey elastomeric coating, or equal[.]" IFB B13001 did not define a "coat" of elastomeric coating.

**{8}** AHA accepted Unified's bid, and the parties entered the Contract on July 15, 2013.

The Contract expressly incorporated Form HUD-5370 (11/2006), which outlines general conditions for the termination of a construction contract due to default by the contractor or for the convenience of the agency. The Contract also contained various clauses related to billing and payment, including (1) a prompt payment clause, which required payment for "properly completed invoice[s]" within thirty days, and (2) a disputed billings clause, which required AHA to pay any undisputed portions of billings and to formally notify Unified of any disputed billings within ten days of receipt.

{9}     On August 8, 2013, Unified submitted an elastomeric coating manufactured by UltraKote Products, Inc. for use in the project. AHA did not approve this product for use. On September 3, 2013, Unified submitted an elastomeric coating manufactured by ParexUSA for use in the project. Although disputes as to which product AHA approved continued throughout the litigation, the record shows that AHA approved ParexUSA elastomeric coating for use on the project on September 9, 2013.[1] ParexUSA elastomeric coating can be applied in one or two coats by spray, brush, or roller over porous or smooth surfaces. The stucco surfaces at issue in this case were porous. Using the "one coat" method, each pail of ParexUSA elastomeric coating would cover 125-180 square feet of a porous surface. Using the "two coat" method, each pail of ParexUSA elastomeric coating would cover 250-375 square feet of a porous surface.

**The Project**

{10}     In September 2013, Unified began work at 716 Morris NE and 903 Nakomis NE. The contract price for these properties was $278,349. Unified submitted its first itemized invoices for work at these locations on September 24, 2013. Attachments to these invoices indicate that Unified had not yet patched stucco or applied elastomeric coating at either location. AHA paid these invoices in full.

{11}     On October 16, 2013, AHA's site inspections revealed deficiencies in the appearance of the finished walls at 716 Morris NE and 903 Nakomis NE. AHA sent numerous emails and a letter between October 16, 2013 and November 13, 2013 requesting confirmation that the approved elastomeric coating was being installed in accordance with the manufacturer's recommendations. Unified repeatedly responded in the affirmative.

{12}     On October 24, 2013, Unified submitted a second set of itemized invoices for work at 716 Morris NE and 903 Nakomis NE. Attachments to these invoices indicate that Unified had completed eighty-eight percent of stucco patching and elastomeric coating application at each location.

---

[1]Significant confusion exists as to whether El Rey elastomeric coating and ParexUSA elastomeric coating are identical products. We refer to ParexUSA elastomeric coating throughout this opinion because it is the product approved by AHA for use on the project and purchased by Unified. Whether AHA intended to approve ParexUSA elastomeric coating for use on the project is unclear but immaterial to this opinion.

**{13}**  On November 25, 2013, Unified submitted a third set of itemized invoices for work at 716 Morris NE and 903 Nakomis NE. Attachments to these invoices indicate that Unified had completed ninety-seven percent of stucco patching and elastomeric coating application at 716 Morris NE and one hundred percent of stucco patching and elastomeric coating application at 903 Nakomis NE.

**{14}**  On November 26, 2013, AHA sent an email notifying Unified that, with respect to the October 24, 2013 invoices, AHA would pay for certain itemized work and withhold payment for other itemized work at the respective properties.

**{15}**  On December 9, 2013, AHA sent another email notifying Unified that AHA would pay for certain work itemized in the November 25, 2013 invoices and would withhold payment for other itemized work. This email included attachments that differentiated between invoiced items by marking certain items "OK." On the same day, AHA exercised its contractual right to audit. The audit requested invoices demonstrating that Unified purchased the approved elastomeric coating for the project.

**{16}**  On December 17, 2013, Unified produced the invoices and a certification letter from its supplier, ProBuild. The invoices showed that, between September 10, 2013 and October 23, 2013, Unified purchased seventy-nine pails of ParexUSA elastomeric coating.

**{17}**  On December 18, 2013, Unified filed a complaint in district court for breach of contract, unjust enrichment, and violation of the Prompt Payment Act. The complaint alleged that AHA breached the Contract by failing to provide notice of billing disputes within ten days and by failing to make prompt payment for undisputed, invoiced items.

**{18}**  On December 29, 2013, Unified submitted itemized invoices for work at 716 Morris NE and 514 Morris NE. Attachments to these invoices indicate that Unified had completed one hundred percent of stucco patching and elastomeric coating application at 716 Morris NE and twenty percent of stucco patching and elastomeric coating application at 514 Morris NE. AHA did not pay these invoices.

**{19}**  On January 3, 2014, AHA terminated the Contract. As grounds for termination, AHA stated that Unified materially breached the Contract by failing to (1) use contractually required construction materials, and (2) follow the manufacturer's recommended application process for the construction materials used. AHA alleged that its inspections revealed that Unified was not following the manufacturer's recommended application process. Unified amended its complaint to include a claim of wrongful termination of the Contract. AHA answered the amended complaint and filed a counterclaim for breach of contract.

**The Trial**

**{20}**  The parties conducted discovery, and the district court set the matter for trial in February 2015. Unified filed a motion for partial summary judgment, which alleged that AHA breached the Contract by failing to comply with contract provisions related to bill payment and billing disputes. The district court entered a preliminary order granting the

motion with respect to liability but reserving judgment on the issue of damages.

**{21}** Witnesses at trial included (1) Unified President Ivan Santistevan, (2) AHA Capital Improvements Projects Coordinator James Tacosa, (3) ProBuild employee Kenneth Garcia, (4) licensed stucco contractor/expert witness Danny Carrillo,[2] (5) AHA Capital Improvements Manager Patrick Strosnider, and (6) AHA Executive Director Linda Bridge. Both Santistevan and Tacosa provided overviews of the events leading up to AHA's termination of the Contract, including the approval of ParexUSA elastomeric coating for use on the project. The other witnesses testified more narrowly and only with respect to their own expertise or involvement in the project.

**{22}** Santistevan testified that (1) AHA approved ParexUSA elastomeric coating for use on the project, (2) Unified applied ParexUSA elastomeric coating according to the manufacturer's recommendations, (3) the ProBuild invoices indicated that Unified purchased seventy-nine pails of ParexUSA elastomeric coating, (4) seventy-nine pails of ParexUSA elastomeric coating would cover between 9,875 and 14,220 square feet of porous surface, (5) 716 Morris NE is 18,986 square feet, (6) 903 Nakomis NE is 19,592 square feet, and (7) Unified "would have" purchased additional pails of elastomeric coating to complete the project.

**{23}** Garcia testified that (1) the ProBuild invoices indicated that Unified purchased seventy-nine pails of ParexUSA elastomeric coating, (2) the stucco surfaces at issue were porous, (3) seventy-nine pails of ParexUSA elastomeric coating would cover between 9,875 and 13,500[3] square feet of porous surface, and (4) he did not recall Unified purchasing elastomeric coating in addition to the quantity reflected on the invoices.

**{24}** Due to the discrepancy between Santistevan's testimony and Garcia's testimony with respect to the purchase of additional elastomeric coating, the district court allowed Unified to recall Garcia for the purpose of introducing additional invoices. Unified declined to recall Garcia.

**{25}** Tacosa testified that 716 Morris NE and 903 Nakomis NE consist of between 40,000 and 43,000 square feet of surface area that required elastomeric coating under the Contract. He further testified that he suspected that Unified was under-applying the elastomeric coating because the ProBuild invoices indicated that Unified purchased insufficient material

---

[2]AHA did not expressly qualify Carrillo as an expert witness. However, when Unified raised this issue, the district court stated "I'm from that school where you don't have to offer the expert, but if the expert starts to testify and you don't believe that he's qualified, then you need to make the objection." Unified did not offer further objection to Carrillo's testimony or expertise.

[3]This calculated range appears to result from a multiplication error during Garcia's testimony. The correct range as per the manufacturer's guide, and as indicated above, is 9,875 to 14,220 square feet.

to cover the surface area in question to the thickness required by the manufacturer.

**{26}** AHA offered expert testimony from Carrillo, whom it hired to provide an independent analysis of Unified's performance. Carrillo conducted visual inspections of 716 Morris NE, 903 Nakomis NE, and 514 Morris NE and prepared a written report that presented his findings. The district court received Carrillo's report in evidence. Carrillo's inspection evaluated Unified's performance against the scope of work outlined in IFB B13001 and concluded that:

> There are numerous instances where new paint was applied directly to existing damaged wood, without adhering to the printed specifications. . . . Paint was not applied to 100% of CMU wall surfaces. In addition there were many instances of paint not being applied to the proper thickness. In order for an elastomeric paint to protect the underlying CMU the paint must be applied such that no moisture can enter below the paint, (no pin-holing). CMU walls were painted without installing cap blocks. . . . Cracks were simply patched with El Rey Premium stucco, no fiber mesh and basecoat. Large holes were left in stucco, allowing points for moisture infiltration. Some walls were painted lacking the proper paint thickness. The lack of proper thickness paint is visually evident, and will remain so for the life of the stucco system. Pin-holing is a characteristic of application, not aging.

Carrillo's testimony was consistent with his report. Carrillo also testified that there would be "no way to get the proper thickness" if the quantity of elastomeric coating purchased by Unified was applied to approximately 40,000 square feet of surface area and agreed with AHA's counsel that the incorrect application of elastomeric coating "is almost worse than not putting it on at all."

**{27}** Both parties offered testimony related to damages resulting from the others' breach of the Contract. Strosnider testified that he walked the project sites with a general contractor for the purpose of estimating the scope and cost of required repairs at 716 Morris NE and 903 Nakomis NE. This estimate was memorialized as Defendant's Exhibit HHH, which the district court received in evidence. The estimate indicated a cost of $125,600 for repairs at 716 Morris NE and 903 Nakomis NE, including (1) applying a second coat of elastomeric coating to the buildings and walls, and (2) sanding, patching, priming and painting the fascia.

**{28}** After the close of the testimony, the parties submitted closing arguments in writing. Unified's argument articulated its position that the Contract required AHA to provide Unified with notice and opportunity to cure prior to termination. On April 10, 2015, the district court issued its letter decision, stating that both parties breached the Contract and were liable for damages.

**{29}** AHA's breach resulted from its failure to follow the disputed billing provision of the Contract. However, the district court ruled that because Unified provided notice of a "major dispute" as of October 15, 2013, AHA was not subject to sanctions under the Prompt Payment Act. The district court awarded Unified $92,318.63 for completed, but unpaid,

work at 716 Morris NE, 903 Nakomis NE and 514 Morris NE.

**{30}** Unified's breach resulted from its failure to apply elastomeric coating in accordance with the manufacturer's specifications and its intentional misrepresentations as to the same. The district court ruled that Unified's conduct resulted in a "material[] breach[]" of the Contract and justified termination by AHA. The district court awarded $125,600 in damages on AHA's counterclaim. It specifically tied this amount to necessary repairs at 716 Morris NE and 903 Nakomis NE. The district court did not award additional damages sought by AHA due to insufficient evidence.

**{31}** In its letter decision, the district court ordered the parties to submit requested findings of fact and conclusions of law within fourteen days if either party wished to appeal. Neither party did so, and the district court entered its judgment on April 24, 2015. On April 27, 2015, Unified filed a motion for reconsideration. This motion addressed (1) whether AHA's evidence of damages was sufficient as a matter of law, (2) the district court's method of calculating damages, and (3) the district court's refusal to grant interest pursuant to the Prompt Payment Act. The district court refused to consider Unified's motion. In doing so, it noted that neither party timely filed findings of fact or conclusions of law. Unified filed requested findings of fact and conclusions of law on June 3, 2015 and filed its notice of appeal on June 11, 2015. The district court did not act on the June 3, 2015 filing.

## PRESERVATION

**{32}** To preserve an alleged error for appeal, a litigant must make known to the court the action that the litigant desires the court to take or the litigant's objection to the action of the court and the grounds therefor. Rule 1-046 NMRA. In their appellate briefing, both parties discuss the effect of Unified's failure to request findings of fact and conclusions of law on our appellate jurisdiction and standard of review. Historically, the failure to request findings of fact and conclusions of law was a bar to appellate review of the sufficiency of the evidence in a civil case. *See, e.g.*, *Duran v. Montoya*, 1952-NMSC-025, ¶ 6, 56 N.M. 198, 242 P.2d 492 ("We have . . . repeatedly held a party could not obtain a review of the evidence where he failed to make requested findings or file exceptions."). However, in *Cockrell v. Cockrell*, our Supreme Court expressly held that "a request for findings [of fact and conclusions of law] is not the only means of preserving error based upon insufficiency of the evidence to support a judgment." 1994-NMSC-026, ¶ 1, 117 N.M. 321, 871 P.2d 977. As such, a party may preserve questions as to the sufficiency of the evidence if the party timely submits findings of fact and conclusions of law or "otherwise call[s] the [district] court's attention to a problem with the sufficiency of the evidence[.]" *Id.* ¶¶ 8-9.

**{33}** In the current case, Unified failed to timely submit requested findings of fact and conclusions of law but did file a motion for reconsideration of the judgment. Had this motion addressed the sufficiency of the evidence, it could have preserved a sufficiency argument on appeal. However, as noted in its brief in chief, the purpose of Unified's motion for reconsideration was not to "challenge any findings made by the [district] court in its letter decision." Instead, the motion for reconsideration "assumed that the [district] court was correct" and "challenged only the legal issues" related to the damages award.

**{34}** We reiterate that a party need not request findings of fact and conclusions of law to preserve certain issues for appeal. *Blea v. Sandoval*, 1988-NMCA-036, ¶ 7, 107 N.M. 554, 761 P.2d 432. However, in the absence of findings of fact and conclusions of law, or an alternate manner of calling the insufficiency of the evidence to the attention of the district court, our review is limited to "review [of] the [district] court's decision to determine whether it is legally correct, and whether it is supported by findings of fact, if any, made by the [district] court." *Id.*

## BREACH OF CONTRACT BY UNIFIED

**{35}** The district court found that Unified materially breached the Contract and concluded that AHA properly terminated the Contract. Unified argues that the district court's finding of breach was erroneous because AHA did not give Unified notice and opportunity to cure as required by the Contract itself and general principles of contract law. AHA argues in response that notice and opportunity to cure are not required to terminate a contract if the alleged breach is "vital" to the existence of the contract or if providing notice and opportunity to cure would be "futile."

**{36}** Both parties assert that we should review this issue as a mixed question of fact and law. We agree but note that our review addresses two distinct questions: (1) whether the Contract required that AHA provide Unified with notice and opportunity to cure prior to termination; and (2) if not, whether Unified materially breached the Contract. The first question is one of law, which we review de novo. *See Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803 ("Contract interpretation is a matter of law[.]"). The second question is one of fact, which we review under a substantial evidence standard. *See Collado v. City of Albuquerque*, 2002-NMCA-048, ¶ 15, 132 N.M. 133, 45 P.3d 73 ("Breach of contract is a question of fact that we review under a substantial evidence standard."); *KidsKare, P.C. v. Mann*, 2015-NMCA-064, ¶ 20, 350 P.3d 1228 ("The materiality of a breach is a specific question of fact." (alteration, internal quotation marks, and citation omitted)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Collado*, 2002-NMCA-048, ¶ 15 (internal quotation marks and citation omitted). However, a party that fails to "request or timely submit findings [of fact and conclusions of law] or otherwise call the [district] court's attention to a problem with the sufficiency of the evidence . . . waive[s the] right to appellate review." *Cockrell*, 1994-NMSC-026, ¶ 9.

### Notice and Opportunity to Cure

**{37}** Unified's brief in chief cites various out-of-state cases for the proposition that "notice and an opportunity to cure is normally considered to be a condition precedent to termination [of a contract] by default." *See, e.g.*, *Blaine Econ. Dev. Auth. v. Royal Elec. Co.*, 520 N.W.2d 473, 476-77 (Minn. Ct. App. 1994) (holding that the contract at issue required written notice and opportunity to cure prior to termination for default). In response, AHA cites various out-of-state cases for the proposition that exceptions to such requirements apply under certain factual circumstances. *See, e.g.*, *Olin Corp. v. Cent. Indus., Inc.*, 576 F.2d 642, 646-47 (5th Cir. 1978) (holding that a breach that is "vital to the existence of the contract" excuses

performance); *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 210 (2d Cir. 2014) (holding that performance is excused "when the breaching party's misfeasance is incurable and when the cure is unfeasible" (alteration, internal quotation marks, and citation omitted)).

**{38}** Either argument may have merit under different circumstances. At common law, "[t]he concept of cure is deeply engrained . . . as an implied condition in every contract." Philip L. Bruner & Patrick J. O'Connor, Jr., 5 *Bruner & O'Connor Construction Law* § 18:37 (2016). In the current case, however, the language of the Contract militates against drawing inferences and instead allows for a decision based upon basic rules of contract interpretation. In *Public Service Company of New Mexico v. Diamond D Construction Company*, this Court compiled and reiterated these basic rules as follows:

> [W]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions. We will not interpret a contract such that our interpretation of a particular clause or provision will annul other parts of the document, unless there is no other reasonable interpretation. Apparently conflicting provisions must be reconciled so as to give meaning to both, rather than nullifying any contractual provision, if reconciliation can be effected by any reasonable interpretation of the entire instrument in light of the surrounding circumstances.

2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651 (internal quotation marks and citations omitted). We apply these rules to the Contract.

**{39}** Section 10.1 of the Contract, entitled "Remedies for Contractor Breach[,]" includes four subsections, numbered 10.1.1 through 10.1.4. The pertinent parts of Section 10.1 and Subsections 10.1.1 and 10.1.2 read:

> 10.1　. . . Pertaining to *contract-related issues*, it is the responsibility of both [AHA] and [Unified] to communicate with each in as clear and complete a manner as possible. If at any time during the term of this contract [AHA] or [Unified] is not satisfied with any issue, it is the responsibility of that party to deliver to the other party communication, in writing, fully detailing the issue and corrective action[.] . . . Further, [AHA] shall, at a minimum, employ the following steps in dealing with [Unified] as to any *performance issues*:

>> 10.1.1　If [Unified] is in material breach of the [C]ontract, [AHA] may promptly invoke the termination clause detailed within Form HUD-5370 (11/2006) . . . and terminate the [C]ontract for cause. . . .

>> 10.1.2　Prior to termination, [AHA] *may* choose to warn [Unified]

verbally or in writing, of any issue of non-compliant or unsatisfactory performance. Such written warning *may* include placing [Unified] on probation, thereby giving [Unified] a certain period of time to correct the deficiencies or potentially suffer termination.

(Emphasis added.) As a threshold matter, the Contract distinguishes between "contract-related issues" and "performance issues." While the Contract does not define these terms, AHA's notice of termination indicates a dispute arising from Unified's performance. Statements by AHA to Unified indicating AHA's dissatisfaction with Unified's performance include, but are not limited to,

Given your *failure to perform* in compliance with contractual requirements to use the material required for construction services as identified in the Technical Specifications . . . and your *failure to follow* the manufacturer's recommended application process for these materials in the construction services you have provided . . . you are in material breach of the . . . Contract[.]

(Emphasis added.)

**{40}** Viewing the Contract as a harmonious whole, performance-related issues are a subset of contract-related issues and are afforded distinct treatment with respect to notice and opportunity to cure requirements. Subsections 10.1.1 through 10.1.4 relate directly to remedies for contractor breach arising from performance-related issues. Subsection 10.1.2 articulates that AHA "may" elect to provide notice and opportunity to cure. *See Cerrillos Gravel Prods., Inc. v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 2005-NMSC-023, ¶ 12, 138 N.M. 126, 117 P.3d 932 (noting that the word "may" is permissive). This language, of course, also affords AHA the right not to provide such notice.

**{41}** Unified argues that language in Section 10.1 requires that AHA provide notice and opportunity to cure in the context of performance-related disputes. But such a reading would nullify the language of Subsection 10.1.2. *See Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19 ("Apparently conflicting provisions must be reconciled so as to give meaning to both, rather than nullifying any contractual provision[.]" (internal quotation marks and citation omitted)).

**{42}** Unified additionally argues that Form HUD-5370 requires that AHA provide notice and opportunity to cure. In support of this argument, Unified cites to Subsection 20(H) of Form HUD-5370, which provides:

If the Contractor does not promptly replace or correct rejected work, the [public housing authority] may (1) by contract or otherwise, replace or correct the work and charge the cost to the Contractor, or (2) terminate for default the Contractor's right to proceed.

**{43}** Subsection 20(h) of Form HUD-5370, however, merely provides an alternate justification for a public housing authority to terminate a contract for default. It in no way limits AHA's right to terminate for material breach as provided in the Contract. Subsection 10.1.1 of the Contract expressly allows AHA to "promptly invoke the termination clause detailed within Form HUD-5370 . . . and terminate the [C]ontract for cause" if Unified "is in material breach[.]" Subsection 20(h) of Form HUD-5370 is not a termination clause. *Compare* Form HUD-5370 § 20, *with* Form HUD-5370 §§ 32, 34.

**{44}** The United States Court of Claims has strictly construed the default clause within Form HUD-5370. *See Prof'l Servs. Supplier, Inc. v. United States*, 45 Fed. Cl. 808, 810 (Fed. Cl. 2000) (holding that federal acquisition requirement (FAR) 48 C.F.R. Section 52.249-10 "does not require that a contractor be afforded a period in which to cure defects before a contract is terminated for default");[4] Bruner & O'Connor, *supra* at § 18:37 ("[T]he absence of an express reference to 'cure notice' in the default clause . . . mean[s] that a federal construction contractor has no right to cure its defaults before termination of its contract."). We see no reason to interpret this federal regulation more broadly than our federal courts.

**{45}** Although deficiencies in Unified's performance undoubtedly could have been cured, neither the Contract nor the default clause contained within Form HUD-5370 requires that AHA provide notice and opportunity to cure performance-related issues prior to termination. As such, AHA was within its contractual rights to terminate the Contract if Unified's conduct resulted in a material breach. *See KidsKare, P.C.*, 2015-NMCA-064, ¶ 20 ("A material breach of a contract excuses the non-breaching party from further performance under the contract.").

**Material Breach of the Contract**

**{46}** Because the district court did not err as a matter of law with respect to Unified's entitlement to notice and opportunity to cure, we turn to the district court's factual findings. Unified argues that the district court's finding that Unified breached the Contract is "directly contrary to all of the evidence."

**{47}** In its letter decision, the district court expressly found that (1) "[i]t would have been mathematically impossible for [Unified] to have properly applied the elastomeric coating[,]" and (2) Unified's failure "to prosecute the work . . . [or] acknowledge[] that [it] had not purchased enough coating to properly complete the work" resulted in a material breach of the Contract. These findings relate to the testimony of Santistevan and Garcia who addressed the quantity and coverage of elastomeric coating pursuant to the manufacturer's recommendations. Unified did not timely submit findings of fact and conclusions of law. As stated above, a party that fails to "request or timely submit findings [of fact and conclusions of law] or otherwise call the [district] court's attention to a problem with the sufficiency of

---

[4]Prior to its recent amendment, the default clause contained within 48 C.F.R Section 52.249-10(a) was identical to that contained in Form HUD-5370. After the amendment, the clauses remain nearly identical.

the evidence . . . waive[s the] right to appellate review." *Cockrell*, 1994-NMSC-026, ¶ 9. As a result, the district court's findings and conclusions as articulated in its letter decision are binding on this Court.

**Substantial Evidence of Unified's Deficient Performance**

**{48}** Unified additionally claims that "the [district] court erred in finding that [it] failed to apply the elastomeric coating in accordance with the manufacturer's recommended thickness." Although Unified characterizes this as a separate argument on appeal, its alleged under-application of the elastomeric coating was the specific basis of the breach. Therefore, these arguments are inextricably linked.

**{49}** As noted immediately above, the district court expressly found that Unified did not apply the elastomeric coating in accordance with the manufacturer's recommendations. Because Unified waived its right "to object that the judgment is not supported by the evidence" the district court's factual findings as to Unified's under-application of elastomeric coating are again binding on this Court. *Id.* ¶ 8 (emphasis omitted).

**GROUNDS FOR TERMINATION**

**{50}** Unified argues that the district court erred in allowing AHA to raise grounds for termination other than those articulated as the basis for termination prior to trial. In doing so, it makes both evidentiary and legal arguments. Unified's evidentiary argument again relates to the district court's findings of fact as to the application of elastomeric coating. We decline to re-address this argument. *See id.* We review Unified's legal argument de novo. *Eker Bros. Inc. v. Rehders*, 2011-NMCA-092, ¶ 7, 150 N.M. 542, 263 P.3d 319.

**{51}** AHA's notice of termination cited Unified's (1) use of a non-approved elastomeric coating and (2) failure to follow the manufacturer's recommended application process. The notice of termination detailed the second justification, referring to Unified's failure to utilize a "two coat" application process. At trial, AHA expanded this justification to include the theory that Unified simply under-applied elastomeric coating, regardless of the number of coats applied.

**{52}** Unified argues that federal contracting law—arguably applicable here due to the Contract's incorporation of Form HUD-5370—prohibited AHA from raising the theory at trial that Unified under-applied elastomeric coating. In support of this argument, Unified cites *McDonnell Douglas Corp. v. United States*, 35 Fed. Cl. 358 (Fed. Cl. 1996), *rev'd on other grounds by McDonnell Douglas Corp. v. United States*, 182 F.3d 1319 (Fed. Cir. 1999).

**{53}** In *McDonnell Douglas*, the United States Court of Claims held that "[a] termination for default may be justified at trial on other grounds in some circumstances, if the Government exercised discretion in terminating the contract." 35 Fed. Cl. at 374. The court, however, limited its holding to circumstances in which "the reason used must have been a non-curable one, so that the contractor would not be prejudiced by the lack of a cure notice."

*Id.* As discussed above, Unified is not entitled to notice and opportunity to cure under the Contract or Form HUD-5370. *McDonnell Douglas* is, therefore, distinguishable inasmuch as the prejudice sought to be prevented does not arise in the absence of the right to notice and opportunity to cure. In the absence of prejudice, we discern no reason to limit the grounds upon which a governmental entity, as a contract purchaser, may attempt to prove a default by a contractor. *See Coll. Point Boat Corp. v. United States*, 267 U.S. 12, 15-16 (1925) (holding that a party to a contract "may . . . justify an asserted termination, rescission, or repudiation, of a contract by proving that there was, at the time, an adequate cause, although it did not become known to him until later"); *Kelso v. Kirk Bros. Mech. Contractors, Inc.*, 16 F.3d 1173, 1175 (Fed. Cir. 1994) (holding that a default termination shall be sustained "if justified by circumstances at the time of termination, regardless of whether the Government originally removed the contractor for another reason").

**{54}** Our conclusion is bolstered by the nature of Unified's argument on this issue. The evidence and notice of termination provide that AHA was concerned that Unified's application of elastomeric coating did not comply with the manufacturer's requirements. Whether AHA articulated this concern by reference to a certain number of coats, or by reference to the gross quantity of elastomeric coating applied, is a distinction without a meaningful difference. Both provide an adequate basis for a finding of material breach due to the under-application of the elastomeric coating. Based upon the evidence presented, it was impossible for Unified to comply with the manufacturer's recommended application requirements and to properly coat all the porous surfaces of the two buildings. The seventy-nine pails of coating purchased were insufficient to comply with the Contract, regardless of whether Unified agreed to apply the coating in a one-step process or a two-step process for 716 Morris NE and 903 Nakomis NE. Under the circumstances of this case, the district court did not err in considering the grounds presented by AHA at trial—the misapplication of the elastomeric coating—as the basis for the termination of the Contract.

## DAMAGES

**{55}** Unified makes two arguments related to the district court's award of damages: (1) whether "as a matter of law, the evidence provided by AHA was sufficiently certain to be the basis for an award of damages," and (2) if so, whether the district court erred by calculating damages in a manner that resulted in a double recovery to AHA.

### Substantial Evidence of Damages

**{56}** As a general rule, the amount of damages claimed for breach of contract must be reasonably ascertainable. *Louis Lyster, Gen. Contractor, Inc. v. Town of Las Vegas*, 1965-NMSC-097, ¶ 7, 75 N.M. 427, 405 P.2d 665. "Damages which are speculative, conjectural, or remote are not to be considered for compensation." *City of Santa Fe v. Komis*, 1992-NMSC-051, ¶ 11, 114 N.M. 659, 845 P.2d 753 (internal quotation marks and citation omitted). Unified argues, essentially, that the evidence at trial is insufficient to meet these standards as a matter of law. We disagree with Unified's characterization of its evidentiary argument as a question of law and reiterate that "we review findings regarding damages to determine whether they are supported by substantial evidence." *Jones v. Auge*, 2015-NMCA-

016, ¶ 48, 344 P.3d 989 (internal quotation marks and citation omitted).

{57}     In *Louis Lyster*, cited by Unified on appeal, our Supreme Court reversed an award of damages because it was based upon a "rough estimate"—a circumstance that arguably occurred in the current case. 1965-NMSC-097, ¶ 8. But *Louis Lyster* was not reversed as a matter of law. It was reversed because substantial evidence did not support the award. *Id.*

{58}     The district court expressly found that "[t]he site inspection did reveal defects with regard to the elastomeric coating, a hole in the soffit, failure to properly prepare the fascia for painting, and other defects[.]" Carrillo's expert testimony and Defendant's Exhibit III, which detailed deficiencies in Unified's performance, support these findings. The district court also expressly found that AHA suffered damages in the amount of $125,600. Strosnider's testimony and Defendant's Exhibit HHH, which detailed the scope and cost of required repairs, support this finding. A district court's calculation of the amount of damages "will not be disturbed unless clearly wrong." *Davis v. Campbell*, 1948-NMSC-041, ¶ 18, 52 N.M. 272, 197 P.2d 430. As discussed repeatedly in this opinion, Unified's failure to preserve its sufficiency argument results in the waiver of its right to a review of the evidence on appeal. *Cockrell*, 1994-NMSC-026, ¶¶ 8-9. Unified's argument that the evidence at trial is insufficient as a matter of law is not well-taken.

**Erroneous Calculation**

{59}     Unified additionally argues that the district court's failure to offset AHA's damages by the value of uncompensated services Unified provided was an error that resulted in a double recovery for AHA. In support of this argument, Unified claims that even the defective work it performed added value to AHA's property. We disagree that Unified is entitled to additional payment or an offset of damages for defective work. However, "[i]t is a fundamental tenet of the law of contract remedies that, regardless of the character of the breach, an injured party should not be put in a better position than had the contract been performed." *Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 30, 118 N.M. 203, 880 P.2d 300 (internal quotation marks and citation omitted).

{60}     UJI 13-850 NMRA provides that damages for defective or unfinished construction are measured by "[t]he reasonable cost of completing the construction called for in the contract." This instruction does not, however, discount general principles of contract law, one of which requires that damages for breach of contract "must be the amount of money that will place [the injured party] in the position [it] would have been in if the contract had been performed." UJI 13-843 NMRA.

{61}     The interplay between these jury instructions is captured in *Castricone v. Michaud*, in which the Illinois Court of Appeals applied the "contract price limitation rule" under similar circumstances. 583 N.E.2d 1184, 1186 (Ill. App. Ct. 1991). In *Castricone*, the defendant was a building contractor who entered a contract to build a single-family home for the plaintiffs. *Id.* at 1184. A dispute arose over the quality of workmanship, and the defendant ceased work prior to completing the project. *Id.* The contract price was $89,000, of which the plaintiffs paid $76,400 prior to the date on which the defendant ceased work.

*Id.* at 1184, 1186. "[T]he plaintiffs expended $27,407.88 to finish the home, and to repair and replace defective construction." *Id.* at 1185.

**{62}** At trial, the district court awarded the plaintiffs $27,407.88, the entire cost incurred in completing and repairing the house. *Id.* The appellate court reversed and reduced the plaintiffs' award for breach of contract damages to $14,807.88. *Id.* at 1186. In so holding, the appellate court applied the contract price limitation rule, which provides that "the measure of damages is the difference between the total cost of completing the building less the contract price." *Id.* at 1185. *See* 24 Richard A. Lord, *Williston on Contracts* §66:17, at 462 (2002 4th ed.) ("If the defect causing the breach is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance, minus the unpaid part of the contract price.").

**{63}** In the current case, the district court awarded contract damages to both Unified and AHA. It based Unified's damages on the value of previously uncompensated work at three project sites: (1) $47,996.84 at 716 Morris NE; (2) $15,842.79 at 903 Nakomis NE; and (3) $28,478.99 at 514 Morris NE. It based AHA's damages on the estimate to repair and complete work at 716 Morris NE and 903 Nakomis NE: a total of $125,600. The district court then fully offset the awards, which resulted in a judgment against Unified in the amount of $33,281.37.

**{64}** We adopt and apply the contract price limitation rule in this case because it comports with the general principles of contract law applied in New Mexico. *See Paiz*, 1994-NMSC-079, ¶ 30 ("It is a fundamental tenet of the law of contract remedies that, regardless of the character of the breach, an injured party should not be put in a better position than had the contract been performed." (internal quotation marks and citation omitted)). Under the contract price limitation rule, the district court's judgment was error.

**{65}** As noted in the district court's letter decision, AHA had previously paid Unified $52,444.98 and $87,200.72 for work performed at 716 Morris NE and 903 Nakomis NE respectively. Therefore, under the district court's decision, Unified will receive, and AHA will pay, a total of $100,441.82 for work performed at 716 Morris NE and $103,043.51 for work performed at 903 Nakomis NE. These payments, totaling $203,485.33, amount to less than the contract price of $278,349 for both properties. To affirm the district court's award of damages to AHA of $125,600 with regard to the 716 Morris NE and 903 Nakomis NE properties, in light of the payments totaling $203,485.33, would place AHA in a better position than if the contract had been fully performed.

**{66}** Instead, AHA is entitled to "the market price of completing or correcting the performance, minus the unpaid part of the contract price." 24 Lord, *supra*, § 66:17, at 462. Therefore, the correct measure of Unified's liability for AHA's damages with respect to 716 Morris NE and 903 Nakomis NE is the difference between the $125,600 required to complete and correct the performance and the unpaid part of the contract price of $74,863.67. This calculation results in damages to AHA of $50,736.33.

**{67}** In order to reach the final damages amount, the $50,736.33 must be reduced by

$28,478.99 to account for damages awarded to Unified for previously uncompensated work at 514 Morris NE. This reduction results in total damages to AHA of $22,257.34. We reverse the district court's judgment in favor of AHA and remand to the district court for entry of a final judgment in favor of AHA in the amount of $22,257.34. *See Miller v. Bank of Am., N.A.*, 2014-NMCA-053, ¶ 47, 326 P.3d 20 (recalculating compensatory damages and remanding to the district court for entry of a final judgment consistent with the opinion), *rev'd on other grounds by Miller v. Bank of Am., N.A.*, 2015-NMSC-022, 352 P.3d 1162.

**NOTICE OF BILLING DISPUTES AND STATUTORY INTEREST**

**{68}** Unified argues that AHA failed to provide timely and sufficient notice of billing disputes as required by the Prompt Payment Act and the Contract. Unified also argues that the district court erred in concluding that it was not entitled to statutory interest under the Prompt Payment Act.

**{69}** With respect to the Contract, the district court found that AHA "technically breached the [C]ontract by failing to follow the disputed billing provision of Section 9.0." While it is possible that this breach merited damages in the form of interest in accordance with the terms of the Contract, the district court did not rule upon or discuss this issue in its letter decision. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked.").

**{70}** With respect to the Prompt Payment Act, the district court ruled that AHA's mid-October 2013 correspondence constituted sufficient notice of a billing dispute to limit statutory liability. This ruling raises questions of statutory interpretation, which we review de novo. *Diamond D*, 2001-NMCA-082, ¶ 48.

**{71}** The Prompt Payment Act provides, in pertinent part, that "all construction contracts shall provide that payment for amounts due shall be paid within twenty-one days after the owner receives an undisputed request for payment." Section 57-28-5(A). The statute does not define "undisputed" as used therein.

**{72}** "Our principal goal in interpreting statutes is to give effect to the Legislature's intent. To do so, we first look to the language used and the plain meaning of that language." *Morris v. Brandenburg*, 2015-NMCA-100, ¶ 15, 356 P.3d 564 (internal quotation marks and citation omitted), *aff'd* 2016-NMSC-027, 376 P.3d 836. Dictionary definitions provide guidance as to the plain meaning of the words at issue. *Griego v. Oliver*, 2014-NMSC-003, ¶ 21, 316 P.3d 865.

**{73}** Webster's International Dictionary defines the word "undisputed" as "not disputed: unchallenged, unquestioned[.]" *Webster's Third New Int'l Dictionary*, 2492 (unabridged ed. 2002). Given this definition, raising a challenge or question as to an invoiced item limits a defendant's liability for statutory interest. Nothing in the plain language of the statute applies additional requirements—for example, those provided by contract—as a consideration in determining liability.

**{74}** The district court concluded that inquiries by AHA related to the application of elastomeric coating placed Unified on notice of a "major dispute" and limited AHA's liability for statutory interest under the Prompt Payment Act. Under the circumstances of this case, we agree.

**{75}** The correspondence considered by the district court in formulating its decision directly relates to Unified's performance under the Contract. For example, the October 16, 2013 post-inspection email messages from AHA to Unified (1) indicated dissatisfaction with the application of elastomeric coating at 716 Morris NE and 903 Nakomis NE, and (2) asked Unified to confirm that it was applying the elastomeric coating in accordance with the manufacturer's recommendations. Similar correspondence continued through mid-November.

**{76}** As indicated by Tacosa's trial testimony, AHA suspected, but was unaware of the extent to which, Unified's performance was deficient. Nevertheless, the mid-October 2013 correspondence from AHA put Unified on notice that a question, or dispute, existed with respect to Unified's entitlement to payment for the subsequently invoiced work—regardless of whether AHA initially indicated that certain items were payable. Such notice is sufficient to limit liability for statutory interest under the Prompt Payment Act.

## MOTION TO RECONSIDER

**{77}** Unified finally argues that the district court erred in denying its motion for reconsideration. We review the denial of a motion for reconsideration for abuse of discretion. *Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 9, 135 N.M. 423, 89 P.3d 672. This Court has held that a district court does not abuse its discretion in denying a motion for reconsideration that "was merely a restatement of the arguments [the defendants] had already advanced." *Id.* ¶ 10; *see, e.g.*, *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (holding that a motion for reconsideration "is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing").

**{78}** Unified's motion for reconsideration raised three issues: (1) whether AHA's evidence of damages was sufficient as a matter of law, (2) the district court's refusal to grant interest pursuant to the Prompt Payment Act, and (3) the district court's method of calculating damages. Unified expressly raised the first two arguments in its written closing argument. As such, the district court did not abuse its discretion in refusing to reconsider these issues. *Deaton*, 2004-NMCA-043, ¶ 9.

**{79}** The third issue relates to the district court's method of calculation of damages. We do not need to address this issue. Even if, in light of our reversal, the district court abused its discretion in denying Unified's motion to reconsider on this issue, the purpose of Unified's motion to reconsider has been realized. Unified stated in its brief in chief that its motion for reconsideration challenged only "whether the [district] court had legally miscalculated its award of damages[.]" We have addressed this issue on appeal.

## CONCLUSION

**{80}** For the foregoing reasons, we affirm in part, reverse in part, and remand to the district court for entry of a final judgment consistent with this opinion.

**{81}  IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**STEPHEN G. FRENCH, Judge**