This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37920**

**EDWIN ORTIZ,**

Plaintiff-Appellee,

v.

**ZIA CREDIT UNION,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Judge**

The Law Office of Jamison Barkley, LLC
Jamison Barkley
Santa Fe, NM

for Appellee

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}**     This appeal concerns two claims arising from a contract for the sale of property between Edwin Ortiz (Plaintiff) and Zia Credit Union (Defendant) (the Contract) entered into while Plaintiff was employed as a senior officer for Defendant. Defendant terminated the Contract by which it sought to purchase the property from Plaintiff, and Plaintiff brought an action alleging, among other things, breach of contract and breach of the implied covenant of good faith and fair dealing (the implied covenant). Defendant counterclaimed, and a jury in the First Judicial District found Defendant did not breach the Contract but breached the implied covenant, awarding Plaintiff $800,000 in

compensatory and $700,000 in punitive damages.[1] Defendant appeals. We conclude the implied covenant to be inapplicable under the facts of this case, and reverse.

**BACKGROUND**

**{2}** In 2007, while Plaintiff was employed by Defendant, he was approached by Del Norte Credit Union, which was interested in purchasing property owned by Plaintiff in Pojoaque, New Mexico (the property) for the purpose of building a branch location. Plaintiff told Defendant's Chief Executive Officer, Larry Mortensen, about Del Norte's interest, and Mortensen responded that Defendant was also interested in establishing a branch in Pojoaque. In October 2007, Seferino Ortiz, Defendant's Senior Vice President for Business Development, received an informal valuation of the property from John Granito, a professional real estate appraiser, who estimated the property's market value to be $750,000. Around this time, Plaintiff learned that Del Norte was no longer interested in purchasing the property. In May 2008, at the request of the Defendant's Board of Directors (the Board), Plaintiff ordered an appraisal of the property from Hippauf & Associates (the Hippauf Appraisal), which estimated the market value of the property then to be $500,000. Plaintiff testified that Seferino Ortiz received the Hippauf Appraisal and shared it with the Board.

**{3}** On August 7, 2008, the Board met to consider whether to acquire the property. During the meeting, Seferino Ortiz proposed that Defendant acquire the property and explained to the Board that it had recently been appraised for $750,000. Seferino Ortiz also explained that "management" recommended a seven-year lease for $6,500 a month ($78,000 a year), with an option to buy. The Board voted that "management" be permitted to negotiate purchase of the property. In an email including Plaintiff, Seferino Ortiz instructed Bryon Teaster, legal counsel for Defendant, to draft a purchase contract including the following terms:

    (1)    $125,000 upfront nonrefundable earnest money deposit;

    (2)    a lease provision calling for payments of $78,000 per year;

    (3)    a guaranteed purchase price of $954,209.45;

    (4)    total funds to Plaintiff of $1,625,209.45.

**{4}** While Plaintiff was employed by Defendant as Senior Vice President of Loans and Collections, he contracted to sell Defendant the property. On January 1, 2009, Seferino Ortiz, on behalf of Defendant, signed a contract to acquire Plaintiff's property containing the terms set forth in the email to Teaster, as well as a termination provision authorizing Defendant to terminate the Contract if any portion of a required permit,

---

[1]Plaintiff additionally asserted claims of wrongful termination and defamation. Defendant counterclaimed asserting breach of corporate and fiduciary duties, breach of contract, intentional and/or negligent misrepresentation, constructive fraud, and unjust enrichment. All claims other than Plaintiff's claim for breach of the implied covenant were rejected by the jury.

which the Contract defined as "including, but not limited to, approval of the New Mexico Financial Institutions Division [(FID)] and the National Credit Union Administration," (NCUA) was denied. The total value of the Contract to Plaintiff was greater than three times the Hippauf Appraisal. In September 2011, the FID and NCUA issued a letter directing Defendant to "cease[] branch expansion" and to determine "the least costly method . . . of extracting itself from the obligations of the lease/purchase of the . . . property in Pojoaque." On April 27, 2012, Defendant notified Plaintiff that it was terminating the Contract. After termination, Plaintiff retained possession of the property, $510,000—comprised of the initial $125,000 deposit and annual lease payments totaling $385,000, as well as the additional value of $180,668.28, the amount paid for "site improvements" by Defendant.

{5}     Plaintiff brought suit against Defendant on May 11, 2015. Following various pretrial proceedings, trial on Plaintiff's claims of breach of contract and breach of good faith and fair dealing, as well as several of Defendant's counterclaims, began on December 11, 2017. At trial, Plaintiff, other witnesses, and expert witnesses Dr. Kenneth Lehrer and Arturo Jaramillo, testified. Defendant called Jaramillo, who testified about fiduciary duties generally, but was not permitted to give an opinion as to whether there had been a breach of any such duty, which was one of Defendant's claims adversely resolved at trial. Nor was Jaramillo permitted to respond to allegations of bias raised by Plaintiff's counsel related to a report prepared by a special investigation committee, appointed by Defendant's Board of Directors to investigate the transaction to acquire the property, and of which Jaramillo was a member. Larry Knoll, another defense witness who was appointed as Defendant's interim CEO in 2012, was likewise not permitted to testify about his own investigation of the terms and formation of the Contract to purchase the property.

{6}     After a six-day trial, the jury determined that Defendant did not breach the Contract with Plaintiff, but found that Defendant did breach the implied covenant by terminating the Contract. It further determined that Plaintiff did not breach any fiduciary duty, negligently misrepresent any material fact, or engage in constructive fraud. Defendant filed post judgment motions, including for judgment as a matter of law, for remittitur, and for a new trial, all of which the district court denied. This appeal followed.

**DISCUSSION**

{7}     On appeal, Defendant requests a new trial and asserts, among other things, that Plaintiff's implied covenant claim was not a proper question for the jury.[2]

---

[2]Defendant also asserts that (1) the district court prejudicially limited the testimony of its expert, (2) its interim chief executive officer was wrongly precluded from testifying to facts supporting a breach of fiduciary duty, (3) the nonuniform jury instruction was erroneous and prejudicial, and (4) remittitur should be granted. Although we decline to resolve the propriety of evidentiary rulings in a trial in which we reverse the jury's verdict, we express our concern regarding each such ruling complained of by Defendant. In the event of retrial on Defendant's remaining claims, we suggest the district court reconsider its evidentiary discretion of these issues in the event they arise again.

**I.     Because the Contract Termination Provision Authorized Defendant to Terminate the Contract and Required Defendant to Exercise Good Faith Therewith, the Jury's Determination That Defendant Did Not Breach the Contract Precluded Liability Under the Implied Covenant**

{8}     Defendant contends that "[t]he implied covenant claim never should have gone to the jury" because the termination provision of the Contract should govern that claim, as well as Plaintiff's breach of contract claim. Plaintiff answers that "[t]he contract at issue was not terminable at will but pursuant to certain conditions which required [Defendant] to use good faith[,]" and that "[t]here is sufficient evidence that [Defendant] terminated the [C]ontract in bad faith."[3]

**A.     The Termination Provision**

{9}     Although Plaintiff does not appeal the jury's determination that Defendant did not breach the Contract, we nonetheless address the impact of that aspect of the jury's verdict in light of the Contract's termination provision, which informs our analysis of the implied covenant's applicability under the facts of this case. Here, in relevant part, the Contract states:

> [If] after the exercise of reasonable good faith efforts, [Defendant]'s application for the Permits, or any required portion thereof or prerequisite therefore, is denied, [Defendant] may, in [Defendant]'s sole discretion, terminate [the Contract].

The Contract defines the term "Permits" as follows:

> "Permits" means all authorizations, consents, licenses, approvals, certificates and permits . . . including, but not limited to, approval of the

---

3Plaintiff answers as well that Defendant failed to preserve the issue of whether it could be held liable for breach of covenant of good faith and fair dealing if the jury determined that it did not breach the Contract. Defendant argues that it preserved the issue through its (1) December 29, 2016, motion for summary judgment; (2) December 13 and 15, 2017 motions for direct verdict; and (3) its motion for judgment as a matter of law. We note that Defendant consistently raised this argument and consider the issue preserved because Defendant's motions alerted the district court to the claimed error, provided an opportunity for Plaintiff to respond, and allowed the court to make a ruling on the matter. *See Progressive Cas. Ins. Co. v. Vigil*, 2018-NMSC-014, ¶ 31, 413 P.3d 850 (explaining that the purpose of preservation is "to ensure that (1) the district court is timely alerted to claimed errors, (2) opposing parties have a fair opportunity to respond, and (3) a sufficient record is created for appellate review"). For instance, in its reply in support of its renewed motion for judgment as a matter of law, Defendant claimed "the jury's verdict on the breach of contract claim would determine whether [Defendant]'s termination was authorized," and "the implied covenant claim could not be used to override the express provisions of the agreement." *See Gonzales v. Shaw*, 2018-NMCA-059, ¶ 14, 428 P.3d 280 (holding that to preserve an issue an appeal "a party must have made a timely and specific objection that apprised the district court of the nature of the claimed error and that allows the district court to make an intelligent ruling thereon" (internal quotation marks and citation omitted)).

[FID] and the [NCUA], to construct and open a commercial banking facility[.]

**{10}** Defendant argues that the jury's finding of liability as to the implied covenant must be reversed because when the FID and NCUA withheld authorization for branch expansion and purchase of the property, Defendant was entitled "to terminate the [Contract] upon denial of a 'Permit[].' " Relying on the Contract provisions as well as express direction to extricate itself from the Contract in the "least costly method" available, Defendant terminated the Contract in April 2012. Plaintiff answers that the letter in question does not foreclose liability under the implied covenant because Defendant had already received permission from the FID to open the branch at the property when it nonetheless opted instead to terminate the Contract. Plaintiff also argues that "the evidence is undisputed that FID did not order [Defendant] to terminate the Contract, but merely to extricate itself in the least costly means possible."

**{11}** As to Plaintiff's later contention, we discern no difference between the letter's instruction to Defendant and the manner chosen by Defendant—use of the Contract's termination provision—to accomplish the FID and NCUA's directive. To embrace such a distinction on appeal would serve only to substitute our judgment for that of the jury as to whether Defendant breached the Contract. That we cannot do, even insofar as our analysis of the central issue of this appeal: whether the breach of the implied covenant claim was a proper question for the jury. *See Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 33, 143 N.M. 506, 177 P.3d 1080 ("We evaluate the evidence with reference to the language of the jury instructions given, which constitute the law of the case."); *Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the trial court is binding on appeal.").

**{12}** Based on the jury's determination that the Contract was not breached, we must then assume Defendant did so in a manner consistent with the Contract's termination clause, a clause that—as Plaintiff concedes—expressly incorporated that Defendant act in good faith. Thus, we must accept that the termination provision of the Contract, in light of the FID and NCUA's direction, warranted termination by Defendant, and in doing so Defendant complied with the Contract's specific requirement of good faith.

## B. The Implied Covenant of Good Faith and Fair Dealing

**{13}** Accepting that Defendant was permitted under its terms to terminate the Contract, we must now resolve whether Defendant is entitled to judgment as a matter of law regarding Plaintiff's claims of breach of the implied covenant. "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." *Ruegsegger v. W. N.M. Univ. Bd. of Regents*, 2007-NMCA-030, ¶ 39, 141 N.M. 306, 154 P.3d 681 (internal quotation marks and citation omitted). "The implied covenant is breached only when a party seeks to prevent the contract's performance or to withhold its benefits from the other party." *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶ 13, 135 N.M. 265, 87 P.3d 545 (internal quotation marks and citation omitted). "In the

absence of a showing that [the d]efendants' actions deprived [the p]laintiff of the benefit of her agreement, [the p]laintiff [may] not, as a matter of law, prevail on a claim that her contractual rights were violated in an intentional way or with bad faith." *Ruegsegger*, 2007-NMCA-030, ¶ 39; *see Paiz v. State Farm Fire & Cas. Co.*, 1994-NMSC-079, ¶ 31, 118 N.M. 203, 880 P.2d 300 (stating that "the implied covenant of good faith and fair dealing protects only against bad faith—wrongful and intentional affronts to the other party's rights, or at least affronts where the breaching party is consciously aware of, and proceeds with deliberate disregard for, the potential of harm to the other party").

**{14}** Critically, the covenant may not be applied to "override express provisions addressed by the terms of an integrated, written contract." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 17, 106 N.M. 726, 749 P.2d 1105. "We view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions." *Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 38, 400 P.3d 290 (alteration, internal quotation marks, and citation omitted). "The purpose, meaning[,] and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844 (internal quotation marks and citation omitted). "Contractual provisions relating to termination or cancellation of an agreement not arrived at by fraud, or unconscionable conduct, will be enforced by law." *Melnick*, 1988-NMSC-012, ¶ 17 (internal quotation marks and citation omitted); *see Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 48, 133 N.M. 669, 68 P.3d 909 (explaining that the *Melnick* rule is not limited to employment contracts).

**{15}** Generally, "an implied covenant cannot co-exist with express covenants that specifically cover the same subject matter." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 1993-NMSC-039, ¶ 56, 115 N.M. 690, 858 P.2d 66. "We align with those courts that have refused to apply an implied covenant of good faith and fair dealing to override express provisions addressed by the terms of an integrated, written contract." *Melnick*, 1988-NMSC-012, ¶ 17; *see, e.g., Cont'l Potash*, 1993-NMSC-039, ¶ 67 (holding that "the trial court erred as a matter of law in finding and enforcing implied covenants . . . that were inconsistent with the provisions of the written agreements"). Therefore, "fully integrated, clear, and unambiguous, termination provisions are legally enforceable and override a claimed breach of the covenant of good faith and fair dealing when there is no showing that the provisions of the contract were arrived by fraud, or unconscionable conduct." *Beaudry v. Farmers Ins. Exch.*, 2018-NMSC-012, ¶ 23, 412 P.3d 1100 (internal quotation marks and citation omitted).

**{16}** Against this legal backdrop, Defendant argues that the breach of contract claim is the only claim that should have gone to the jury because the district court "should not also have allowed the jury to consider whether this same conduct breached the implied covenant." Plaintiff answers that because the Contract was not terminable at will, "the covenant of good faith and fair dealing was implied." Plaintiff also asserts that Defendant "could only terminate under certain specified conditions" and "[t]herefore, the

covenant of good faith and fair dealing required [Defendant] to act in good faith in rendering performance subject to those conditions." We agree with Defendants.

**{17}** Because the implied covenant of good faith and fair dealing may not override an express termination provision of a contract, the question becomes whether the termination provision here overrides the implied covenant, such that the provision and covenant cannot coexist. *Melnick*, 1988-NMSC-012, ¶ 17; *Cont'l Potash*, 1993-NMSC-039, ¶ 56. We have stated that "[i]t [is] incongruous to hold that the defendants acted in bad faith in acting in accordance with an express contractual provision." *Cont'l Potash*, 1993-NMSC-039, ¶ 67. For instance, in *Beaudry,* the New Mexico Supreme Court refused to apply the implied covenant of good faith and fair dealing in determining whether the defendant insurance company could be held liable under a theory of prima facie tort for terminating its insurance contract with the plaintiff when the plaintiff breached the contract. 2018-NMSC-012, ¶¶ 4, 23-24. The Court reasoned that the implied covenant must not be applied because restrictions on the application of the covenant "are intended to ensure that the court only intervenes to protect the justified expectations of the other party" and "not to change or modify the language of an otherwise legal contract for the benefit of one party and to the detriment of another." *Id.* ¶ 24 (internal quotation marks and citations omitted); *see* Restatement (Second) of Contracts § 205 cmt. a (Am. L. Inst. 1981).

**{18}** To reiterate, the Contract termination provision provided Defendant discretion "after the exercise of reasonable good faith efforts," to "terminate [the Contract] at any time after June 30, 2009[,]" if its "application for the Permits, *or any required portion thereof*" is denied. (Emphasis added.) Because the Contract termination provision expressly provided that if any portion of Defendant's application for a permit was denied, including authorization from the FID and NCUA, Defendant could terminate the Contract. *See Beaudry v. Farmers Ins. Exchange*, 2017-NMCA-016, ¶ 104, 388 P.3d 662 (Hanisee J., dissenting) ("The public policy favoring the freedom of private parties to set the terms of their commercial relationships should not be discarded[.]"), *rev'd on other grounds*, 2018-NMSC-012. Therefore, as explained above, the letter from the FID and NCUA allowed Defendant to exercise its right to terminate the Contract.[4] A claim of breach of the implied covenant may not be applied to override the Contract's express termination provision. *See Melnick*, 1988-NMSC-012, ¶ 17 (stating that "[w]here a contract provides for a manner by which termination can be effected, those provisions

---

[4]Plaintiff argues that such termination provision was an "abuse of . . . power" and is "expressly included by the restatement as grounds for a claim of breach of the covenant of good faith and fair dealing." *See* Restatement (Second) of Contracts § 205 cmt. e. We are not persuaded that such provision is an abuse of power. *See Santa Fe Custom Shutters & Doors, Inc. v. Home Depot U.S.A., Inc.*, 2005-NMCA-051, ¶ 44, 137 N.M. 524, 113 P.3d 347 (explaining that "parties to a contract may negotiate and bargain for provisions which are beneficial to them" (alteration, internal quotation marks, and citation omitted)); *see also*, *Beaudry*, 2018-NMSC-012, ¶ 24 (emphasizing that "great damage is done where businesses cannot count on certainty in their legal relationships and strong reasons must support a court when it interferes in a legal relationship voluntarily assumed by the parties" (alteration, internal quotation marks, and citation omitted)). Moreover, Plaintiff fails to explain why the termination provision is an abuse of power, such that the implied covenant was breached. "This Court has no duty to review an argument that is not adequately developed." *Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701.

must ordinarily be enforced as written" (internal quotation marks and citation omitted)). Here the implied covenant is duplicative of the good faith required of Defendant in the Contract itself.

**{19}**    Stated differently, Defendant's right to apply the Contract termination provision first required "the exercise of reasonable good faith efforts" in seeking necessary permits under the Contract. Given that, to apply the implied covenant would expressly override the Contract's good faith requirement. *See Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp.2d 979, 1031-32 ("Generally, in the absence of an express provision on the subject, a contract contains an implied covenant of good faith and fair dealing between the parties." (internal quotation marks and citation omitted)). By concluding there was no violation of the Contract terms—which required a good faith effort—the jury necessarily determined there was not an act of bad faith making the implied covenant inapplicable to the case at hand.

**{20}**    We also observe that the trial record reveals no evidence, beyond the fact that Defendant terminated the Contract, of any act of bad faith by Defendants. To the contrary, Defendants paid all the money it owned Plaintiff on the lease of the property, invested in its improvements, and paid an initial deposit to Plaintiff. When the Contract was terminated, the property's ownership remained with Plaintiff. As well, to the extent that Plaintiff asserts that the FID initially granted Defendant permission, the FID and NCUA letter clearly indicates that such permission was expressly revoked. Moreover, Plaintiff fails to demonstrate any bad faith on behalf of Defendant in connection with the FID's revocation of permission, even assuming permission was initially granted. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."); *In re of Estate of Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990 ("This [C]ourt will not search the record to find evidence to support an appellant's claim."). In any event, Plaintiff offered no evidence of bad faith related to the denial of the permits or termination, and therefore fails to show intentional or bad faith violation of contractual rights. *See Ruegsegger*, 2007-NMCA-030, ¶ 39.

**{21}**    We hold under New Mexico law that the termination provision's good faith requirement renders the implied covenant inapplicable in this case. Therefore, Plaintiff's implied covenant claim was not a proper question for the jury, and we reverse its verdict in this regard.

**CONCLUSION**

**{22}**    For these reasons, we reverse and remand for proceedings consistent with this opinion.

**{23}    IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**SHAMMARA H. HENDERSON, Judge**