2003-NMCA-119

77 P.3d 298

Holly SEIPERT, Petitioner–Appellee,

v.

Marlin J. JOHNSON, Respondent–Appellant.

No. 22,304.

Court of Appeals of New Mexico.

July 29, 2003.

Certiorari Denied, No. 28,232, Sept. 15, 2003.

Catherine Oliver, Catherine Oliver, P.C., Taos, NM, for Appellee.

Michael Schwarz, Santa Fe, NM, for Appellant.

## OPINION

JAMES J. WECHSLER, Chief Judge.

{1} In a custody proceeding, the Taos County district court awarded sanctions and attorney fees and expenses to Mother and temporarily restricted Father's visitation with the parties' child (Child). Father asks us to consider (1) whether a South Dakota trial court's ruling on Father's liability for Mother's costs should preclude the New Mexico district court from entering a judgment against him for the attorney fees and expenses Mother incurred in the South Dakota proceeding; (2) whether a New Mexico district court has the power to sanction Father for misconduct that occurred before a

South Dakota court and whether the district court properly exercised this power under the facts of this case; and (3) whether the district court abused its discretion by considering statements made outside the record in determining whether to restrict Father's visitation rights. We hold that a New Mexico court may sanction a litigant for conduct in another state when that conduct is an affront to the courts of this state, but we hold that the district court did not make the findings required before such sanctions may be imposed. We therefore remand the issue of sanctions. In other respects, we affirm.

*Background*

{2} Mother has sole legal custody and has lived with Child in Taos, New Mexico, since 1995. Father resides in South Dakota. Father and Mother have contested issues of custody, visitation, and financial support in New Mexico since 1996. Under an order from the Taos County district court (district court or New Mexico district court), the parties mediated the issue of Father's visitation with Child, and the parties agreed that Child would visit Father in South Dakota for two three-week periods during the summer of 2000. During Child's second visit, Father claimed that Child showed signs of having been abused, which Father blamed upon Mother. On August 11, 2000, two days before Father was scheduled to return Child to Mother's custody, Father obtained an order from a South Dakota court temporarily extending visitation, awarding temporary custody to Father, and ordering Mother to appear before that court to show cause why her custody of Child should not be modified. In his pleadings and affidavit, Father did not inform the South Dakota court about the continuing custody case in New Mexico.

{3} Mother immediately retained an attorney in South Dakota and filed a motion to quash the court order. In her motion, Mother entered a special appearance for the purpose of challenging jurisdiction and alerted the South Dakota court that it did not have jurisdiction because the New Mexico district court had continuing jurisdiction of the matter. She also argued that no emergency existed to confer jurisdiction upon the South Dakota court, that Child should be returned to her, and that she should be compensated for expenses and attorney fees incurred in responding to the custody petition in South Dakota. A forensic interview conducted by the Child Advocacy Center in South Dakota found no evidence that Child had been subjected to abuse. On August 25, 2000, the South Dakota court quashed its order to show cause, ordered that Father immediately return Child to Mother, and reserved for later determination the issue of reimbursement of Mother's attorney fees and expenses.

{4} On September 8, 2000, Mother filed a motion in the district court to sanction Father for the South Dakota custody action, to limit Father's visitation with Child to visits in New Mexico, and for reimbursement of attorney fees and expenses incurred in the South Dakota proceeding. The hearing on Mother's motion set for November 1, 2000 was continued upon a motion Father filed that day so he could obtain new counsel. Meanwhile, on October 20, 2000, Father filed a motion in the South Dakota court seeking to absolve himself of liability from Mother's claims. A hearing on Father's motion in South Dakota was set for October 30, 2000. Mother did not appear at that hearing, and, on November 6, 2000, the South Dakota court issued an order absolving Father of liability. Mother claims that she never received Father's motion and had no notice of the hearing, although the motion reflects service on Mother's South Dakota attorney.

{5} On February 20, 2001, the district court conducted a continued hearing on Mother's motion for sanctions, restricted visitation, and reimbursement of attorney fees and expenses incurred in South Dakota. The district court stated that a South Dakota proceeding would not have preclusive effect on issues being litigated in the original, ongoing action in New Mexico. The district court observed that it could impose a remedy for any sanctionable conduct in the continuing action, regardless of the action taken by the court in South Dakota. It subsequently issued an order in which it sanctioned Father for initiating the custody hearing in South Dakota and awarded fees for expenses incurred by Mother in having to respond to the

South Dakota action. Describing Father's actions in South Dakota as a "breach of trust," the district court ordered that Father's visitation with Child be supervised by an agency in Taos "for the time being." The district court also required Father to undergo an interactional assessment by a qualified psychologist in New Mexico before the district court would consider whether the South Dakota visitation should be reinstated.

*Father's Res Judicata Argument*

■ {6} As a preliminary matter, the statute upon which the New Mexico district court relied has been superceded. The Child Custody Jurisdiction Act, NMSA 1978, §§ 40–10–1 to –24 (1981, as amended through 1989) (repealed 2001 N.M. Laws, ch. 114, § 404) (CCJA), has been superceded by the Uniform Child Custody Jurisdiction and Enforcement Act, NMSA 1978, §§ 40–10A–101 to –403 (2001) (UCCJEA). However, a transitional provision of the UCCJEA provides that "[a] motion or other request for relief made in a child-custody proceeding or to enforce a child-custody determination which was commenced before the effective date of the [UCCJEA] is governed by the law in effect at the time the motion or other request was made." Section 40–10A–403. We therefore apply the earlier version of the uniform act in this appeal. *See Escobar v. Reisinger*, 2003–NMCA–047, ¶ 10, 133 N.M. 487, 64 P.3d 514.

{7} In the South Dakota proceeding, Mother had asked the court to dismiss Father's action for lack of jurisdiction under the CCJA, stating that because New Mexico was the home state of Child, it was the state with jurisdiction to decide child custody matters. *See* § 40–10–3(E); § 40–10–4(A). Mother had asked for reimbursement for the attorney fees and expenses she incurred defending the action under a provision of the South Dakota Child Custody Jurisdiction Act permitting the court to decline to exercise jurisdiction "[i]f the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct." *See* S.D. Codified Laws § 26–5A–8 (rev.1999). The South Dakota statute also provides that "a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses." *Id.; see also* § 40–10–9(C). Although the South Dakota court quashed its order on Father's underlying custody claim, the court denied Mother's request for reimbursement.

{8} On appeal, Father contends that although the South Dakota court may not have had jurisdiction over the underlying claim, it nevertheless had the power to reimburse Mother and refused to do so. Consequently, Father argues that the South Dakota court's order absolving him of liability precludes the New Mexico district court from entering a judgment against him for Mother's expenses and fees expended in defense of the South Dakota action under the principle of res judicata. Mother responds that the South Dakota judgment should not be entitled to preclusive effect because she was not given notice of the hearing concerning reimbursement of her expenses as required by res judicata and the South Dakota Child Custody Jurisdiction Act. *See* S.D. Codified Laws § 26–5A–5 (rev. 1999).

{9} The New Mexico district court ruled that the South Dakota court's judgment could not preclude it from sanctioning misconduct that occurred in a case in which it had original and continuing jurisdiction. Accordingly, the district court found that Father's initiation of the South Dakota action and his failure to provide the court of that state with sufficient information to alert it to the New Mexico district court's continuing jurisdiction of the custody case was sanctionable. We do not decide whether the South Dakota court's judgment is entitled to preclusive effect under res judicata. Rather, we hold that the New Mexico district court could have been separately wronged by Father's misconduct, which the district court could properly sanction under its inherent power to control the litigation and the conduct of the parties before it. However, as we later discuss, in order to sanction under its inherent power, a district court must make specific findings that were not made in this case. Accordingly, we must remand for the district court to make those findings.

{10} If the district court does not make the requisite findings, it cannot exercise its inherent power to sanction. In the absence of an inherent power to sanction, the district court must decide whether to apply res judicata to the South Dakota court's judgment. On the record before us, it appears that res judicata would apply inasmuch as the record reflects service of the motion on Mother's South Dakota counsel and the matter of awarding Mother her travel and attorney costs was squarely before the South Dakota court, decided, and not appealed. *See Thoma v. Thoma*, 1997–NMCA–016, ¶ 13, 123 N.M. 137, 934 P.2d 1066 (discussing the requirements for full faith and credit); *City of Las Vegas v. Oman*, 110 N.M. 425, 432, 796 P.2d 1121, 1128 (Ct.App.1990) (stating elements for res judicata). Mother contends that she did not get a fair opportunity to litigate the matter in South Dakota because the notice to her attorney, even if given, was technically insufficient under South Dakota law. If true, Mother may have been able to have appealed in South Dakota. The district court, on remand, in its discretion, may take further evidence on the question of res judicata if it does not make the findings required to sanction under its inherent power.

*The Court's Inherent Power to Sanction*

{11} Our Supreme Court has recognized that "courts must have inherent power to impose a variety of sanctions on both litigants and attorneys in order to regulate their docket, promote judicial efficiency, and deter frivolous filings." *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 120 N.M. 1, 4, 896 P.2d 1148, 1151 (1995) (internal quotation marks and citation omitted). The principle of inherent power "protects the integrity of the judicial process" by "concern[ing] itself with the proper functioning of the court system." *Rest. Mgmt. Co. v. Kidde–Fenwal, Inc.*, 1999–NMCA–101, ¶ 22, 127 N.M. 708, 986 P.2d 504; *N.M. Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 27, 127 N.M. 654, 986 P.2d 450 ("[C]onduct in proceedings before a court or in defiance of a court's authority directly impacts a court's ability to perform its essential judicial functions.").

{12} In *Baca*, our Supreme Court adopted the reasoning of the United States Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), which our Supreme Court described as a bad-faith exception to the American Rule under which parties typically pay their own fees. *Baca*, 120 N.M. at 4, 896 P.2d at 1151. The United States Supreme Court had held in *Chambers* that federal courts, under their inherent power, could assess attorney fees for "willful disobedience of a court order" and "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46, 111 S.Ct. 2123 (internal quotation marks and citation omitted). In New Mexico, a court may award attorney fees "to vindicate its judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *Baca*, 120 N.M. at 5, 896 P.2d at 1152.

{13} In addition, the United States Supreme Court stated that a "party may be sanctioned for abuses of process [that occurred] beyond the courtroom, such as disobeying the court's orders." *Chambers*, 501 U.S. at 57, 111 S.Ct. 2123. The New Mexico Supreme Court held that a court's inherent power encompasses "conduct occurring before the court or in direct defiance of the court's authority." *Baca*, 120 N.M. at 6, 896 P.2d at 1153. As in *Chambers*, our Supreme Court concluded in *Baca* that the court's inherent power could sanction conduct before another tribunal if that conduct was "in direct defiance of the sanctioning court's authority." *Baca*, 120 N.M. at 5, 896 P.2d at 1152.

{14} In this case, Father was sanctioned in the amount of $7000 for improperly filing a custody petition in South Dakota and for failing in that petition to notify the South Dakota court of the proceedings in New Mexico. *See* S.D. Codified Laws § 26–5A–9 (rev.1999); § 40–10–10. The New Mexico district court also awarded attorney fees of $3257.98 to Mother for her motion to restrict visitation as well as $2441.16 for fees incurred by Mother in the ongoing litigation, in addition to those previously awarded. Fa-

ther does not challenge the award of attorney fees for the New Mexico litigation.

{15} An appellate court reviews the imposition of sanctions under an abuse of discretion standard. *Gonzales v. Surgidev Corp.*, 120 N.M. 151, 157, 899 P.2d 594, 600 (1995). "[W]e entrust sanctions short of dismissal to the sound discretion of the trial court." *Lewis ex rel. Lewis v. Samson*, 2001–NMSC–035, ¶ 13, 131 N.M. 317, 35 P.3d 972 (internal quotation marks and citation omitted). Under this standard of review, "we will disturb the trial court's ruling only when the trial court's decision is clearly untenable or contrary to logic and reason." *Id.* (internal quotation marks and citation omitted).

{16} Father argues that the district court erred in imposing sanctions because the court was sanctioning misconduct that had not occurred before it but rather before the South Dakota court. He also contends that he should not be sanctioned because he relied upon the advice of counsel when he pursued the South Dakota action. We disagree.

{17} Father knew of the New Mexico proceedings, which, under the CCJA, vested jurisdiction in the New Mexico district court. *See* § 40–10–3(E); § 40–10–4(A). He nevertheless pursued an action in the South Dakota court in an attempt to improperly gain custody of Child, while concealing the New Mexico proceedings from the South Dakota court. His initiation of the South Dakota proceedings was in direct defiance of the New Mexico court's authority. *See Baca*, 120 N.M. at 5, 896 P.2d at 1152. There is sufficient evidence in the record to support the view that when Father failed to return Child after the South Dakota visitation, as mediated by the parties under an order of the New Mexico district court, he acted in "willful disobedience of a court order." *See Chambers*, 501 U.S. at 45, 111 S.Ct. 2123 (internal quotation marks and citation omitted).

{18} At the evidentiary hearing, Father attempted to justify his actions in South Dakota by stating that he had relied on the advice of a psychologist and an attorney in filing the petition. On appeal, he raises the same assertions to contend that he should not be sanctioned for initiating the South Dakota action because he relied in good faith on their advice. We are not persuaded by these claims.

{19} The psychologist's affidavit, which Father submitted with his South Dakota petition, was for the most part based on information provided by Father and not on any personal knowledge of the psychologist, who was a long-time personal friend of Father. The district court found the psychologist's affidavit contained "conclusions about [Mother] for which [the psychologist] had no basis and which are unprofessional and perhaps unethical." As to Father's testimony, acknowledged by the district court, that he relied upon erroneous legal advice, Father also testified at the hearing in New Mexico that his South Dakota attorney proceeded with the action based on Father's description of the status of the New Mexico case.

{20} As we have stated, bad faith, in the context of sanctions, extends to behavior that "is a conscious or intentional failure to comply, as opposed to involuntary or accidental non-compliance." *Allred v. Bd. of Regents*, 1997–NMCA–070, ¶ 27, 123 N.M. 545, 943 P.2d 579. "[M]isconduct is not any less misconduct because it is executed with a veneer of good intentions." *Id.* ¶ 31 (internal quotation marks and citation omitted). In spite of the enactment of uniform child custody jurisdiction statutes throughout the United States, including the Federal Parental Kidnapping Prevention Act, all intended to put a halt to actions such as Father took in this case, courts are still plagued with litigation taken in bad faith by parents in their attempts to frustrate custody decrees. At some point, courts need to put an emphatic stop to such litigation. When a parent in the non-jurisdiction state presents an unsupportable story of abuse and fails to inform the non-jurisdiction court of continuing proceedings, it is an affront to the court of the state with child custody jurisdiction. Such an affront warrants the imposition of sanctions severe enough to put a stop to the practice. Our review of the record would support the district court's exercise of its inherent powers to sanction Father's bad faith conduct.

{21} However, the district court did not make any specific finding of bad faith. In *Baca*, 120 N.M. at 8, 896 P.2d at 1156, the Supreme Court ruled that the generalized conclusion that "the Department 'acted in bad faith, vexatiously, wantonly and for oppressive reasons in dismissing [Baca] and in pursuing this litigation over the past four years' " was not specific enough to support an award of sanctions, particularly because the actual discharge of Baca was beyond the district court's power to sanction. The Court remanded the matter for the district court to tie its findings of bad faith, vexatiousness, wantonness, and oppression to conduct properly before the district court. *See id.*

{22} To a similar effect in this case, the district court's written findings expressly made no determination of the truth of Father's allegations in South Dakota and acknowledged that Father received erroneous professional advice. The district court's oral comments also acknowledged that Father was "probably trying to act in his [child's] best interests" and expressed some sympathy with Father's position. As Father's brief in chief points out, these comments may be viewed as being inconsistent with the sort of findings necessary to impose sanctions under the district court's inherent power. Nonetheless, the district court did impose sanctions under circumstances that can be defended on this record only under inherent power. Therefore, we remand so that the district court may make appropriate findings, or for further proceedings if necessary.

*The Limitation of Father's Visitation Rights*

{23} At the conclusion of the hearing, the district court orally reviewed the proceedings and indicated what its rulings would be on the various claims. Father contends that the district court erred when it improperly relied on statements made outside the court in making its decision about his visitation with Child. He asserts that the district court's action violated his due process right to cross-examine witnesses.

{24} Father acknowledges that he did not object to the statement and thus has not preserved this argument for our review. *See* Rule 12–216(A) NMRA 2003; *State v. Vare-*

*la,* 1999–NMSC–045, ¶¶ 25–26, 128 N.M. 454, 993 P.2d 1280 (holding that, in order to preserve an issue for appeal, it is essential that a party must make a timely objection specifically apprising the trial court of the claimed error and invoking an intelligent ruling thereon); *see also State v. Sosa,* 1997–NMSC–032, ¶ 23, 123 N.M. 564, 943 P.2d 1017 (holding that the court would not consider the defendant's due process claim because he had not preserved the issue for appeal).

{25} Father contends that he did not object because he had no opportunity to do so, asserting that it would have been inappropriate to interrupt the court during its ruling. This Court recently considered a similar claim in *O'Neel v. USAA Insurance Co.,* 2002–NMCA–028, ¶ 5, 131 N.M. 630, 41 P.3d 356, and concluded that there had been sufficient opportunity to object to the trial court's failure to correct the challenged verdicts during the period when the court read the special verdict aloud in its entirety, polled the jurors, solicited counsel to prepare the judgment, and asked the attorneys if there was anything else. Similarly, the record in this case shows that there was ample time to challenge the disputed statement and that Father, in fact, did speak up during the district court's discussion, once to object to the continued use of Mother's expert witness and later to clarify which fees Father was disputing. Under these circumstances, Father had the opportunity but failed to preserve the claimed error on appeal.

{26} In the alternative, Father asks this Court to exercise its discretion under Rule 12–216(B)(1) but does not demonstrate how the matter presents an issue of general public interest. Father does not challenge the district court's finding of fact that his visitation with Child should be in Taos and supervised because Father's actions in South Dakota created a breach of trust. An unchallenged finding of the trial court is binding on appeal. *Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). "Oral remarks may not be relied upon for reversal." *Elder v. Park,* 104 N.M. 163, 166, 717 P.2d 1132, 1135 (Ct.App.1986).

{27} Finally, Father requests that a different judge be assigned to this matter, asserting bias. Our review of the record has not revealed any bias on the part of the district court judge. We decline to reassign the case.

*Conclusion*

{28} We affirm the district court's power to award sanctions under its inherent authority under the facts of this case and affirm the district court's limitation on Father's visitation with Child. We deny Father's request to assign a different judge. We remand for the district court to either make the findings necessary to the exercise of its inherent power or, failing that, to determine whether res judicata applies to the ordinary award of fees and costs incident to domestic relations litigation, bearing in mind that on the current record, it does so apply. We award Mother attorney fees of $4000 under NMSA 1978, § 40–4–7(A) (1997) and Rule 12–403(B)(3) NMRA 2003.

{29} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.