## ASHCRAFT V. MAKWA BUILDERS

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO for the use and benefit of ASHCRAFT MECHANICAL INC., a New Mexico corporation,
Plaintiff/Counterdefendant-Appellee,
v.
MAKWA BUILDERS, LLC,
Defendant/Counterclaimant-Appellant,
and
STATE OF NEW MEXICO for the use and benefit of ASHCRAFT MECHANICAL, INC., a New Mexico corporation,
Plaintiff-Appellee,
v.
GREAT AMERICAN INSURANCE COMPANY,
Defendant-Appellant,
and
MAKWA BUILDERS, LLC,
Third-Party Plaintiff,
v.
OHIO CASUALTY INSURANCE COMPANY,
Third-Party Defendant.**

Docket No. A-1-CA-35872
COURT OF APPEALS OF NEW MEXICO
May 16, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Carl J. Butkus, District Judge

### COUNSEL

Calvert Menicucci, P.C., Sean R. Calvert, Albuquerque, NM for Appellee

Philip Dabney, P. Reid Griffith, Los Alamos, NM, SMTD LAW LLP, Robert J. Berens, Phoenix, AZ for Appellant.

### JUDGES

MEGAN P. DUFFY, Judge. WE CONCUR:  M. MONICA ZAMORA, Chief Judge,
KRISTINA BOGARDUS, Judge

**AUTHOR:** MEGAN P. DUFFY

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}**     This appeal arises from a dispute between a subcontractor, Ashcraft Mechanical,
Inc., and a general contractor, Makwa Builders, LLC, over payment and offsets,
respectively. Following a bench trial, the district court issued forty-seven findings of fact
and fifteen conclusions of law, and granted judgment in favor of Ashcraft on all matters.
Makwa appeals. We affirm the district court's judgment.

**BACKGROUND**

**{2}**     Makwa was the general contractor on a construction project to build a new
student union building for New Mexico Highlands University (NMHU) in the summer of
2010. Makwa hired Ashcraft as a subcontractor. Ashcraft in turn subcontracted parts of
its contract and a portion of the work eventually fell to Hays Plumbing & Heating.

**{3}**     Ashcraft submitted a payment application in the amount of $59,336 for work
performed through the end of December 2011. About two months later, Makwa
informed Ashcraft that its December payment application had been adjusted down to
$21,558.08 but was otherwise approved. Ashcraft revised the application to reflect the
adjusted amount and resubmitted it to Makwa. Makwa stipulated at trial that it was paid
$21,558.08 by NMHU for Ashcraft's December invoice, but that it did not pay Ashcraft.
In this same period, Hays submitted a claim to Makwa's surety, Great American
Insurance Company, alleging it too had not been paid for work performed.

**{4}**     NMHU terminated Makwa's contract for convenience before construction was
complete, and Makwa then terminated its subcontract with Ashcraft. Having not
received payment from Makwa for the December payment application, Ashcraft sued
Makwa and Great American for breach of contract, violations of the Prompt Payment
Act (PPA), NMSA 1978, Sections 57-28-1 to -11 (2001, as amended through 2007), and
the Little Miller Act, NMSA 1978, Sections 13-4-18 to -20 (1923, as amended through
2015). Makwa filed an answer and a counterclaim for breach of contract, seeking
declaratory relief and an order requiring Ashcraft to indemnify and defend it from Hays's
claim. The district court issued judgment in favor of Ashcraft on all matters.

**DISCUSSION**

**{5}**     All of the issues presented in this appeal involve mixed questions of law and fact.
"[We] review a district court's interpretation of an unambiguous contract de novo" and
effectuate the intent of the parties by adopting a "reasonable construction of the usual

and customary meaning of the contract language." *Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 10, 143 N.M. 684, 180 P.3d 1183 (internal quotation marks and citation omitted). "The facts are reviewed to see if they are supported by substantial evidence, but the legal conclusions flowing from those facts are reviewed de novo." *Bank of Santa Fe v. Marcy Plaza Assocs.*, 2002-NMCA-014, ¶ 12, 131 N.M. 537, 40 P.3d 442; *see also Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153 ("Findings of fact made by the district court will not be disturbed if they are supported by substantial evidence."). "We review the evidence in the light most favorable to support the trial court's findings, resolving all conflicts and indulging all permissible inferences in favor of the decision below." *Jones v. Schoellkopf*, 2005-NMCA-124, ¶ 8, 138 N.M. 477, 122 P.3d 844.

## I.      Waivers Were Not a Condition Precedent to Makwa's Obligation to Offer Payment

**{6}**      Makwa argues that Ashcraft was not entitled to payment because Ashcraft failed to submit lien waivers from its subcontractors, which Makwa claims is a contractual condition precedent to payment. "Generally, a condition precedent is an event occurring subsequently to the formation of a valid contract, an event that must occur before there is a right to an immediate performance, before there is breach of a contractual duty, and before the usual judicial remedies are available." *W. Commerce Bank v. Gillespie*, 1989-NMSC-046, ¶ 4, 108 N.M. 535, 775 P.2d 737 (citing 3A A. Corbin, *Corbin on Contracts* § 628, at 16 (1960)).

**{7}**      The parties' contract identifies two types of waivers—conditional and unconditional waivers. The conditional waiver states that it becomes effective and that the subcontractor waives its right to assert a lien when the subcontractor has been paid for its work. Rider D to the parties' contract states that the conditional waiver must be included with Ashcraft's applications for payment and refers to a form provided within the contract for Ashcraft to use.

**{8}**      Separately, the contract identified *un*conditional waivers as a "condition precedent" to payment. The unconditional waiver form was different from the conditional waiver form, stating that the subcontractor had already been paid and, therefore, *un*conditionally waived its right to assert a lien against the project. Rider D states clearly that Ashcraft was required to submit the *un*conditional waivers "when the check is picked[]up." Rider D also states:

> After the first draw, and prior to the release of [next] payment, [Ashcraft] shall submit *unconditional* lien waivers from all major suppliers who have submitted Preliminary Lien Notices to Makwa Builders, LLC, or furnished materials and/or labor on this project. . . . This procedure shall take place each month *when the subcontractor is to pick[]up his monthly draw check*. (Emphasis added.)

**{9}**     At trial, Dawn Gurule, Ashcraft's contract administrator and project coordinator, testified that the parties followed a procedure consistent with Rider D, stating that "I would submit a pay application. And normally I—a lien release would follow with Ashcraft mechanical. Lien releases were then provided from our subcontractors and suppliers to Makwa *once we were notified that payment was available*." (Emphasis added.)

**{10}**    The plain, unambiguous language in the contract states that the unconditional lien waivers were a condition precedent to payment, but that these waivers were not due until Ashcraft was to pick up the monthly check; as such, Makwa necessarily had a duty to offer payment to Ashcraft before Ashcraft's duty to produce the unconditional waivers arose. We conclude that Ashcraft's duty to submit unconditional lien waivers was a condition precedent to Makwa's duty to *release* the payment to Ashcraft, and not a condition precedent to Makwa's duty to *offer* the payment in the first place. The district court's findings that Ashcraft had satisfied all conditions precedent to Makwa's duty to pay, that payment was due to Ashcraft, and that Makwa's failure to pay was a material breach of the subcontract are supported by substantial evidence.

## II.     Makwa's Claims for Offsets Are Not Supported

### A.     Offset Claim for Water Hauling Costs

**{11}**    Makwa asserts that it is entitled to a $21,000 offset for amounts paid to Hays to transport water to the construction site. Neither party disputes the district court's finding that "Ashcraft agreed to provide the means and methods to transport the water from the job locations to its work." The parties' contract states: "Construction Water: temporary water services for construction needs will be provided at certain specific job locations. The subcontractor shall provide any and all methods by which to transport water to its area where needed from points at which the water service is located." The district court found that

> [t]he source of water for the project was originally located at a park near the project. . . . During the course of the project, NMHU changed the location of the source of the water to NMHU's golf course. Ashcraft declined to transport water from the NMHU golf course to the project site.

The district court further found that "[t]he NMSU golf course was not a job location" and that "Makwa was in breach of its Subcontract obligations by failing to provide water on site."

**{12}**    On appeal, Makwa challenges only two of the district court's findings: (1) that "Makwa was obligated under the terms of its Subcontract with Ashcraft to provide temporary water for construction services to the project site"; and (2) that "[i]t was not Ashcraft's contractual obligation to transport water from its source [at the golf course] to the area of the Project."

**{13}** The plain language of the parties' contract includes a promise by Makwa that water would be provided at "certain specific job locations." Makwa argues that "job locations" is not synonymous with "jobsite," a term used elsewhere in the parties' contract. However, Makwa failed to challenge the district court's finding that the golf course was not a "job location" and this unchallenged finding is binding on appeal. *See Robey v. Parnell*, 2017-NMCA-038, ¶ 22, 392 P.3d 642 ("An unchallenged finding of the trial court is binding on appeal." (internal quotation marks and citation omitted)). Moreover, as Makwa's interpretation would render meaningless the word "job" in "job location," we conclude that the district court correctly found that Makwa was obligated to provide water services at the project site. *See Smith & Marrs, Inc.*, 2008-NMCA-043, ¶ 10 (stating that we adopt a "reasonable construction of the usual and customary meaning of the contract language"). Further, Makwa would have us read Ashcraft's promise to transport water in isolation to mean that Ashcraft agreed to transport water from *any* location to the area where needed. This overlooks the mutual promises set forth in the "Construction Water" paragraph, which must be read together. *See Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 19, 131 N.M. 100, 33 P.3d 651 ("[W]e view the contract as a harmonious whole, give meaning to every provision, and accord each part of the contract its significance in light of other provisions."). Ashcraft's agreement to transport water immediately follows Makwa's promise that water would be provided at the job location and, read harmoniously, means that Ashcraft agreed to transport water only from the water source provided at the job location. The district court's findings are supported by substantial evidence and we conclude that the district court appropriately denied Makwa's claim for an offset for water transportation costs.

## B.    Claim for Offset for Attorney Fees

**{14}** Makwa also claims that it is entitled to an offset of $16,711.50 for the attorney fees it incurred to "defend" against a bond claim by Hays. While Ashcraft had a contractual duty to defend, indemnify, and hold Makwa harmless, Makwa does not point to any action taken by Hays to pursue its claim for payment other than submitting its initial demand letter in November 2011. Makwa, and not Hays, initiated litigation regarding Hays's claim, and Hays declined to participate, resulting in a default judgment in Makwa's favor.

**{15}** To determine whether a contractual duty to defend has arisen, we look to the facts asserted in the complaint. *See, e.g.*, *City of Albuquerque v. BPLW Architects & Engineers, Inc.*, 2009-NMCA-081, ¶ 11, 146 N.M. 717, 213 P.3d 1146 ("Because the duty to defend is a contractual obligation, we hold that regardless of the type of contract containing it, the duty to defend arises when the language of a complaint states a claim that falls within the terms of the contract."). Makwa fails to cite any authority for the proposition that Ashcraft's contractual duty to defend was triggered when Makwa filed a lawsuit against Hays, nor does it persuade us that this duty can or should be construed to require Ashcraft to pay attorney fees under these circumstances. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). We conclude that the

district court did not err in finding that Makwa is not entitled to an offset for any amount incurred in "defending against Hays's claim."

## C.     Offset Claim for Refund of Bond Premium

**{16}**     Makwa asks for an offset of $7,051.09 for an amount it claims Ashcraft "should have" received as a refund of its bond premium. Ashcraft secured and maintained a performance bond for its work, and Makwa paid the bond premium. Makwa asserts that because the contract was terminated early, the value of Ashcraft's ultimate scope of work decreased, and therefore, the bond premium likewise "should have" decreased, resulting in a partial refund. As an initial matter, Makwa failed to challenge any of the district court's findings related to this claim. *See Seipert v. Johnson,* 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the trial court is binding on appeal."). Further, Makwa does not point to any provision in the parties' contract that requires Ashcraft to reimburse Makwa under these circumstances. Makwa provided no evidence that Ashcraft received a refund. To the contrary, Ashcraft's witness testified that Ashcraft was asked to stay on the project and complete the work under the new general contractor and never received a refund of any bond premium. Therefore, Makwa's offset claim fails.

## III.     Makwa's Failure to Pay Ashcraft Violated the Prompt Payment Act

**{17}**     Finally, Makwa argues that the district court erred in awarding interest and attorney fees to Ashcraft under the PPA, raising the issue of whether the amount owed to Ashcraft was "undisputed" and "due" pursuant to the PPA. The PPA provides that when a contractor fails to pay its subcontractor within seven days of receiving payment, interest accrues "beginning on the eighth day after payment was due, computed at one and one-half percent of the undisputed amount per month or fraction of a month until payment is issued." Section 57-28-5(C). The PPA also provides that "[i]n an action to enforce the provisions of the [PPA], the court may award court costs and reasonable attorney fees." Section 57-28-11. Makwa states that Ashcraft's failure to supply the lien waivers and Makwa's claims for offsets are "disputes" that render the PPA inapplicable here.

**{18}**     We have held that "undisputed" within the PPA means "unchallenged, unquestioned." *Unified Contractor, Inc. v. Albuquerque Hous. Auth.*, 2017-NMCA-060, ¶ 73, 400 P.3d 290 (alteration omitted). "Given this definition, raising a challenge or question as to an invoiced item limits a defendant's liability for statutory interest." *Id.* The record indicates that Makwa made no challenge to Ashcraft's December payment application and did not raise any argument regarding the waivers or offsets before payment was due to Ashcraft. After payment was due, Makwa waited an additional year—after Ashcraft filed its complaint—and only raised these arguments as affirmative defenses in its answer to Ashcraft's complaint. Makwa does not explain how its after-the-fact claim that a dispute existed justifies its failure to pay Ashcraft within the timeframe set forth in the PPA or operates to preclude the application of the interest or attorney fee provisions of the PPA. More important, however, is that the district court

found that "Makwa did not assert any disputes with Ashcraft's December payment application, as amended and resubmitted on February 9, 2012" and that "[p]ayment by Makwa to Ashcraft was due under the terms of New Mexico's Prompt Payment Act by February 15, 2012. Makwa's failure to pay was a material breach of the Subcontract and/or the [PPA]." Makwa failed to challenge these findings and they are therefore binding, and dispositive, on appeal. *See Seipert,* 2003-NMCA-119, ¶ 26. We hold that the amount due to Ashcraft was undisputed and, therefore, Makwa is subject to the interest and attorney fee provisions of the PPA.

**CONCLUSION**

**{19}** For the reasons set forth above, we affirm the district court.

**{20}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**KRISTINA BOGARDUS, Judge**