This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37067

**GYROS, INC.,**

Plaintiff-Appellee,

v.

**MAL MAHON,**

Defendant-Appellant,

and

**DENNIS PESCE, Individually,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice J. Brickhouse, District Judge**

The Turner Law Firm, LLC
Scott E. Turner
Albuquerque, NM

for Appellee

Crowley & Gribble, P.C.
Clayton E. Crowley
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**M. ZAMORA, Judge.**

**{1}**     Plaintiff hired Defendant and his now-deceased Codefendant[1] to supply equipment and construction services in connection with the build-out of Plaintiff's restaurant space. Defendant misrepresented himself as a licensed contractor and performed the duties of a contractor. Plaintiff prevailed at trial on his claim that Defendant's knowing and intentional misrepresentation concerning his licensure violated the New Mexico Unfair Practices Act (UPA), NMSA 1978, §§ 57-12-1 to -26 (1967, as amended through 2019).

**{2}**     Defendant argues on appeal that the construction project in this case was not subject to the UPA since the contemplated construction work involved improvements to what Defendant characterizes as "realty." He contends that because he supplied equipment and performed work that was later "incorporated into real estate," he furnished to Plaintiff neither "goods" nor "services" as contemplated by the plain language of the UPA. As such, Defendant argues the UPA does not apply to this case under *McElhannon v. Ford*, 2003-NMCA-091, ¶ 17, 134 N.M. 124, 73 P.3d 827 ("To the extent goods and services are combined to create a structure that is permanently affixed to realty, they are understood to have been 'converted' to realty."). Unpersuaded by Defendant's argument, we affirm.

## Standard of Review

**{3}**     The district court entered findings of fact and conclusions of law. Defendant does not challenge the sufficiency of the evidence supporting any of the court's findings of fact. "An unchallenged finding of the trial court is binding on appeal." *Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298; *see also Cockrell v. Cockrell*, 1994-NMSC-026, ¶ 9, 117 N.M. 321, 871 P.2d 977 (holding a party may preserve questions as to the sufficiency of the evidence if the party timely submits findings of fact and conclusions of law or "otherwise call[s] the [district] court's attention to a problem with the sufficiency of the evidence").

**{4}**     Defendant's challenge to the applicability of the UPA is an issue of statutory interpretation. "[T]he meaning of language used in a statute is a question of law . . . we review de novo." *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 22, 147 N.M. 583, 227 P.3d 73 (internal quotation marks and citation omitted). "Our primary goal in interpreting statutes is to give effect to the [L]egislature's intent." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 48, 131 N.M. 100, 33 P.3d 651. In doing so, we "look to the plain language of the statute." *Carrillo v. My Way Holdings, LLC*, 2017-NMCA-024, ¶ 22, 389 P.3d 1087. "When statutory language is clear and unambiguous, this Court must give effect to that language and refrain from further statutory interpretation." *Id.* (internal quotation marks and citation omitted).

## The UPA Applies to the Sale of "Goods" and "Services"

---

[1]Defendant Dennis Pesce died prior to trial and is not a party to this appeal.

**{5}**     The UPA "prohibits misrepresentations made in connection with the sale of goods or services by a person in the regular course of his trade or commerce." *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 21, 142 N.M. 437, 166 P.3d 1091 (alteration, omissions, internal quotation marks, and citation omitted). The UPA makes unlawful any "unfair or deceptive trade practice," which it defines in pertinent part as

> a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services . . . by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person.

Section 57-12-2(D). Section 57-12-2(D) also provides a "nonexhaustive list" of nineteen such practices. *Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 11, 453 P.3d 434.

**{6}**     Our Supreme Court has directed New Mexico courts to "ensure that the [UPA] lends the protection of its broad application to innocent consumers." *State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 48, 329 P.3d 658 (internal quotation marks and citation omitted). The Legislature intended the UPA to serve as remedial legislation for consumer protection, and "we interpret the provisions of this Act liberally to facilitate and accomplish its purposes and intent." *Truong*, 2010-NMSC-009, ¶ 30 (internal quotation marks and citation omitted).

**{7}**     In the present case, Plaintiff contracted with Defendant to construct tenant improvements and supply equipment in connection with a restaurant remodel. The work performed by Defendant was the type of work that could only be performed by a licensed contractor. Defendant misrepresented himself to Plaintiff as a licensed contractor and performed the duties of a contractor. Defendant was not, however, a licensed contractor either at the time of execution of the contract or while he was constructing tenant improvements and supplying equipment associated with Plaintiff's restaurant. The totality of the evidence demonstrated Defendant misled and deceived Plaintiff into believing he was a licensed contractor. The district court also found Defendant's work was of poor workmanship and was defective.

**{8}**     The district court therefore found a violation of the UPA, concluding "the evidence that [Defendant] misrepresented himself as a licensed contractor and performed the duties of a contractor when he was not a licensed contractor is sufficient evidence" thereof. *See* § 57-12-2(D)(17) ("failing to deliver the quality . . . of . . . services contracted for"); *see also* § 57-12-2(D)(7) ("representing that . . . services are of a particular standard, quality or grade"), § 57-12-2(D)(14) ("using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive").

**{9}**     On appeal, Defendant seeks to avoid UPA liability by arguing the statute does not apply to the construction work he performed for Plaintiff. The contract between the

parties was limited to the construction of tenant improvements and the provision of equipment. Defendant nonetheless contends he did not furnish to Plaintiff either "goods" or "services" as those terms are contemplated by the UPA. We disagree.

**{10}** This Court has previously defined "goods" as "personal estate as distinguished from realty." *McElhannon*, 2003-NMCA-091, ¶ 17 (emphasis omitted). We have defined "services" as "work done by one person at the request of another." *Id.* (internal quotation marks and citation omitted). We limit our analysis in this case to whether the findings of the district court meet the plain language of the UPA, when viewed through the lens of liberal construction. *See Carrillo*, 2017-NMCA-024, ¶ 22 (looking to the plain language of the statute to discern legislative intent); *B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 48 (charging our courts with ensuring the UPA lends the protection of its broad application to innocent consumers).

**{11}** Plaintiff hired Defendant to renovate a restaurant space. There was no finding below that Defendant constructed for Plaintiff any form of "realty" or that the parties entered into any contract for the sale of real estate. Instead, Defendant testified he supplied equipment in connection with the restaurant renovation and the district court found the same. We conclude Defendant supplied "personal estate"—as opposed to "realty"—in the form of equipment needed for the restaurant to operate. As such, Defendant furnished to Plaintiff "goods" under the plain language of the UPA. *See McElhannon*, 2003-NMCA-091, ¶ 17.

**{12}** Further, the district court found Defendant acted as a contractor by engaging in activities such as building a foundation for a freezer building, installing telephone wire, constructing walls, and routing electrical wiring. Defendant coordinated laborers, performed physical labor, and was present for the entire project on a near-daily basis. We conclude Defendant furnished "services" to Plaintiff—work done by one person at the request of another—within the contemplation of the UPA. Under the plain language of the UPA and *McElhannon*, 2003-NMCA-091, ¶ 17, therefore, Defendant provided both "goods" and "services" to Plaintiff. We affirm the district court's conclusion that Defendant committed an "unfair or deceptive trade practice" in violation of the plain language of the UPA.

## Defendant's Authority Is Inapposite

**{13}** Defendant argues recent New Mexico case law in an effort to avoid the plain language construction set forth above. We find no basis for reversal in Defendant's authority. We address *McElhannon*, *Fogelson v. Wallace*, 2017-NMCA-089, ¶ 77, 406 P.3d 1012, and *Lenscrafters, Inc. v. Kehoe*, No. 28,145, mem. op. (N.M. Ct. App. Oct. 15, 2010) (non-precedential), *aff'd in part and rev'd in part*, 2012-NMSC-020, 282 P.3d 758, in turn.

**{14}** *McElhannon* involved a contract for sale of completed residence. 2003-NMCA-091, ¶¶ 2-6. The plaintiffs purchased a home from the defendants after construction had been completed. *Id.* ¶ 3. After purchasing and occupying the home, the plaintiffs found

various defects. *Id.* ¶ 5. Upon investigation, they learned the home had been constructed without the proper permits. *Id.* The plaintiffs filed suit, including in their complaint a UPA claim alleging that defective "goods and services" provided during the construction of the home, prior to the plaintiffs' purchase of the completed realty, constituted a UPA violation. *Id.* ¶ 16. This Court disagreed.

**{15}** Employing a plain language analysis, we concluded the UPA does not apply to a sale of completed real estate. *Id.* ¶¶ 16-17. "To the extent goods and services are combined to create a structure that is permanently affixed to realty, they are understood to have been 'converted' to realty." *Id.* ¶ 17. "[I]n ordinary usage a completed house, as a form of realty, cannot be 'goods,' " and "[a]s tangible property, a house cannot constitute 'services.' " *Id.* As such, the sale of a *completed house* is not a sale of "goods or services" for purposes of Section 57-12-2(D). *McElhannon*, 2003-NMCA-091, ¶ 17.

**{16}** Defendant contends *McElhannon* relieves him of UPA liability because the goods and services he provided to Plaintiff later converted to realty and thereafter fell outside the contemplation of the UPA. We do not read *McElhannon* to be protective of Defendant in this case. In *McElhannon*, the contract between the parties was for the sale of a completed dwelling. *See id.* The plaintiffs were neither contractually nor otherwise involved in the construction of the subject home. *See id.* Our analysis in *McElhannon* was predicated "upon the fact that the house at issue was 'completed,' such that, in context, the definitions of goods and services are 'combined' rather than viewed independently." *Fogelson*, 2017-NMCA-089, ¶ 77; *see also* 73 C.J.S. *Property* § 23, at 203 (1983) (noting where goods and services are combined to create a structure that is permanently affixed to realty, the goods and services are understood to have been "converted" to realty).

**{17}** Defendant in the instant case did not sell Plaintiff completed realty. There was neither argument nor a finding below that Defendant either contracted to sell to Plaintiff a completed piece of real estate, or in fact did so. Instead, the parties contracted "for the construction of tenant improvements required in order for [Plaintiff] to open for business." As such, Defendant specifically contracted with Plaintiff for the provision of goods—i.e., "personal estate as distinguished from realty"—and services—i.e., "work done by one person at the request of another" in connection with certain leasehold improvements. *See McElhannon*, 2003-NMCA-091, ¶ 17 (emphasis, internal quotation marks, and citation omitted). The "combined" analysis set forth in *McElhannon* does not apply to the facts found by the district court in the present case.

**{18}** Defendant relies on *Fogelson*, in which the parties entered into a purchase agreement for the construction and purchase of a home to be built on a vacant lot. 2017-NMCA-089, ¶ 9. The home was never completed by the defendant, distinguishing *Fogelson* from *McElhannon. See id.* ¶ 10. The plaintiffs sued under various theories, and their UPA claim was dismissed below. *Id.* ¶¶ 12-13. On cross-appeal this Court reversed, reasoning that because the plaintiffs never received a completed house, the "combined" view of goods and services expressed in *McElhannon* did not apply to deprive the plaintiffs of their UPA claim. *Id.* ¶ 78. Instead, we considered—as we do

here—the plain meaning of the language of the UPA. We concluded the construction services provided by the defendant prior to completion of the project "were undoubtedly 'work done by one person at the request of another.' " *Id.* ¶ 81 (quoting *McElhannon*, 2003-NMCA-091, ¶ 17). In reversing the district court, we concluded "[i]n the absence of language [in the UPA] expressly including or excluding construction services, construction services rendered prior to the completion of a residential home are 'any services' as defined in Section 57-12-2." *Fogelson*, 2017-NMCA-089, ¶ 81.

**{19}**　Following *Fogelson*, we likewise conclude in the instant case the "combined" view of goods and services expressed in *McElhannon* does not apply to the facts found by the district court. Again, this case does not involve the sale of completed real estate. The parties in our case instead contracted for "construction services rendered prior to completion" of a leasehold restaurant space. *See Fogelson*, 2017-NMCA-089, ¶ 78. We find no basis in either *McElhannon* or *Fogelson* to relieve Defendant of liability for the provision of defective goods or services in connection with the contemplated construction project.

**{20}**　In sum, Defendant's specious argument that "the merger of the improvements with the real estate appears to remove the UPA from any such transaction regardless of the quality of the work" fails for at least two reasons. First, there was neither argument nor evidence nor any finding entered below concerning merger of Defendant's ostensible improvements with real estate. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 (internal quotation marks and citation omitted). Second, Defendant seeks to defeat the remedial purposes of the UPA. If we were to credit Defendant's argument in this case, we would essentially make lawful the provision of defective goods and shoddy services in connection with New Mexico construction projects, so long as the goods and services in question are eventually incorporated into a completed piece of saleable real estate. According to Defendant, any unfair or deceptive trade practice committed by a construction contractor during the course of construction "merges" with the completed realty, the contractor escapes UPA liability, and someone else becomes liable for any problems found with the defectively constructed real estate. This is an untenable position under our broad, remedial UPA. *See Truong*, 2010-NMSC-009, ¶ 30. In our view, Defendant's conduct in this case is exactly what the UPA is intended to proscribe. We decline to apply a theory of merger drawn from inapplicable case law to save Defendant from his own conduct.

**{21}**　Defendant also seems to rely upon *Lenscrafters*, No. 28,145, mem. op. In *Lenscrafters*, a defendant optometrist subleased space from the plaintiff. *Id.* at *1. After the defendant vacated the subleased space and moved his practice less than a mile away, the plaintiff sued to enforce a non-compete provision in the parties' sublease agreement. *Id.* The defendant counterclaimed, alleging among other things the plaintiff's actions violated the UPA. *Id.* The district court dismissed this claim, and on appeal this Court decided the sublease agreement upon which the defendant's counterclaim was

based was not subject to the UPA. *Id.* at *8.[2] We noted "the UPA applies only to goods and services and not to the rental of real property such as office space" and found the defendant did not present any material evidence at trial to support his UPA counterclaim. *Id.* As such, we concluded the UPA did not fit the facts in that case. *Id.*

**{22}**    We fail to see how this unpublished case helps Defendant, and his briefing does little to explain. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). If *Lenscrafters* stands for anything in the context of the instant case, it stands for the well-settled proposition that the UPA applies only to goods and services. This much we can ascertain, however, from the plain language of the statute. *See* § 57-12-2(D). *Lenscrafters* does nothing to persuade us to Defendant's position.

**{23}**    We are satisfied in this case that the unchallenged facts found by the district court describe a UPA violation. Defendant furnished to Plaintiff, in connection with the contemplated construction project, both "goods" and "services" as those terms are defined under New Mexico law. Further, because the parties contracted for construction goods and services, rather than for the sale of completed realty, we find no basis in Defendant's authority to deviate from our plain language analysis. We hold the UPA applies to Defendant's conduct.

**CONCLUSION**

**{24}**    For the foregoing reasons, we affirm.

**{25}    IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**

---

[2]Defendant did not pursue his UPA claims in the Supreme Court. *Lenscrafters, Inc.*, 2012-NMSC-020, ¶ 28.