The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 26, 2023

**No. A-1-CA-38912**

**EZEQUIEL RODRIGUEZ, SR.,**

Plaintiff-Appellant,

v.

**EUGENIO SANCHEZ; EZ OILFIELD SERVICES, INC.; UNITED STATES OF AMERICA, DEPARTMENT OF THE TREASURY; INTERNAL REVENUE SERVICE; and NEW MEXICO TAXATION AND REVENUE DEPARTMENT,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G.W. Shoobridge, District Court Judge**

Law Offices of Marshall J. Ray, LLC
Marshall J. Ray
Albuquerque, NM

for Appellant

Newell Law Firm, LLC
Michael Newell
Christan Quiroz Valencia
Lovington, NM

for Appellees Eugenio Sanchez and EZ Oilfield Services, Inc.

**OPINION**

**DUFFY, Judge.**

{1}     Plaintiff Ezequiel Rodriguez, Sr. (Seller) sued his business partner, Defendant Eugenio Sanchez (Purchaser), for breach of contract after the parties' contract for Purchaser to buy out Seller's interest in their business went unperformed because Purchaser was unable to obtain financing that Seller would accept. Following a bench trial, the district court determined that Purchaser obtaining bank financing was a condition precedent to an enforceable contract and entered judgment in favor of Purchaser. Seller appeals, challenging the district court's conclusions that the contract was unenforceable and that no equitable relief was available to Seller. We affirm.

**BACKGROUND**

{2}     Seller and Purchaser co-owned and operated EZ Oilfield Services, Inc. In 2015, Seller voluntarily walked away from the management of the business and Purchaser assumed full control. In 2016, the parties went through mediation and entered into a contract for Purchaser to buy Seller's interest in the business.

{3}     Generally, the contract terms called for Seller to convey his interest in the business—500 shares of common stock—for the total purchase price of $425,000. The contract required Purchaser to make a $75,000 down payment payable within forty-five days, "contingent on Purchaser being able to obtain bank financing." We

will refer to this term as the financing contingency throughout the remainder of this opinion. The remaining $350,000 was to be paid in seventy monthly installments of $5,000. To secure the monthly installments, Seller would retain a security interest in the business and its assets. The contract contained a closing provision that specified the time for performance, stating that "the transfer of [s]tock and the payment of the $75,000.00 down payment shall take place within forty-five (45) days of the execution of this agreement and accompanying security and financing statements." The parties executed the contract on June 10, 2016.

{4}     Purchaser obtained bank financing through Gulf State Bank for the down payment. The bank, however, required Seller to subordinate his security interest in the business. When Purchaser tendered the loan documents to Seller, Seller refused to accept any payment that would require him to subordinate his security interest. At trial, Purchaser "testified that he obtained another form of private financing through two ranchers but [Seller] refused to accept the payment," insisting that Purchaser obtain "bank" financing instead. Purchaser apparently never procured financing that was acceptable to Seller, the parties never closed on the contract, and Seller never relinquished his shares.

{5}     During this period, the price of oil began to drop and the business became unprofitable. EZ Oilfield Services, Inc. eventually went out of business with $417,761.08 in outstanding business debt and tax liability. In early 2017, as all of

this was unfolding, Seller sued Purchaser for breach of contract, seeking to "accelerate all sums due and owing under said agreement and proceed to foreclose his secured interest in all assets of EZ Oilfield Services, Inc."

{6}      The case proceeded to a half-day bench trial, after which the district court determined that the parties' contract contained a condition precedent that Purchaser obtain bank financing, and because that condition had not been fulfilled, the parties' contract was unenforceable. As a result, the district court concluded that Seller and Purchaser remain co-owners of the business and were each responsible for half of the debt.

{7}      Seller timely appealed to this Court.

**DISCUSSION**

{8}      On appeal, Seller argues that the parties had a valid, enforceable contract because (1) the financing contingency was not a condition precedent to the formation of a valid contract, (2) the financing contingency only conditioned the initial payment and did not impact Purchaser's duty to perform the remainder of the contract terms, and (3) Purchaser's failure to fulfill the condition precedent was a breach of the contract. In the alternative, Seller argues that if the contract is unenforceable, he is entitled to equitable relief. We agree with Seller that the parties had a valid contract, but we perceive no error in the district court's conclusion that the obligation to perform was discharged because the condition precedent went

3

unfilled within the time limit specified by the contract. Likewise, the district court did not err in declining Seller's request for equitable relief.

## I. Seller's Contract Arguments

{9} Seller's contract arguments present a mixed question of law and fact. We review the district court's application of the law to the facts de novo. *See Skeen v. Boyles*, 2009-NMCA-080, ¶ 17, 146 N.M. 627, 213 P.3d 531. To the extent it is necessary to do so, "we review the district court's findings of fact for substantial evidence." *Id.*

### A. The Financing Contingency Was a Condition Precedent to Performance

{10} At issue is the district court's conclusion that the financing contingency was a "condition precedent necessary for an enforceable contract." In the law of contracts, a condition precedent is generally understood as "an event occurring [after] the formation of a valid contract, an event that must occur before there is a right to an immediate performance, before there is breach of a contractual duty, and before the usual judicial remedies are available." *W. Com. Bank v. Gillespie*, 1989-NMSC-046, ¶ 4, 108 N.M. 535, 775 P.2d 737 (quoting 3A Arthur L. Corbin, *Corbin on Contracts* § 628, at 16 (1960)); *see also Condition*, *Black's Law Dictionary* (11th ed. 2019) (defining "condition precedent" as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. If the condition does not occur and is not excused, the promised performance need

4

not be rendered."). While the definition in *Gillespie* refers to conditions in the context of a contract that already exists, the Court noted that New Mexico recognizes two types of conditions precedent—those that are "prerequisites to an obligation to perform under an existing agreement," and those that are prerequisites to the formation or existence of the contract itself. *Gillespie*, 1989-NMSC-046, ¶ 4; *see also* 2 E. Allan Farnsworth & Zachary Wolfe, *Farnsworth on Contracts* § 8.02 at 8-10, 8-11 n.14 (4th ed. Supp. 2021) (noting that the Restatement Second of Contracts expressly does not use the term "condition" to describe "events that must occur before a contract comes into existence" but observing that "[t]he use of conditions to refer to events that must occur before the parties to an agreement are bound is . . . common, and shows no signs of abatement"). Whether a condition is a condition precedent to formation or to performance is determined by the intent of the parties. *Gillespie*, 1989-NMSC-046, ¶ 4.

{11}     In this case, it is unclear whether Seller is initially challenging the district court's conclusion that the financing contingency was a condition precedent. Based on the plain language of the parties' contract, we affirm the district court's conclusion on this point. The contract states, "The purchase price is $425,000.00 payable as follows: Seventy-Five Thousand Dollars ($75,000) payable within forty-five days of the execution of this agreement. *This payment is contingent on Purchaser being able to obtain bank financing*." (Emphasis added.) The word

5

"contingent" means "[d]ependent on something that might or might not happen in the future; conditional." *Contingent*, *Black's Law Dictionary* (11th ed. 2019). Thus, the plain language of the parties' contract states an express condition.

{12}   Seller argues that the district court erred in concluding that the financing contingency was a condition precedent to the *formation* of the contract. We do not agree that the district court so concluded. The district court's order states that "[Purchaser] obtaining bank financing was the condition precedent necessary for an *enforceable* contract." (Emphasis added.) The district court's use of the word "enforceable" indicates the court viewed the financing contingency as a condition precedent to *performance*. When a contract contains a condition precedent to performance, the right to enforce the contract does not arise until the condition precedent has been fulfilled. *See* 2 Farnsworth, *supra*, § 8.02 at 8-7, -8 n.8; *see also* Restatement (Second) of Contracts § 225, Westlaw (database updated May 2023) (Effects of the Non-Occurrence of a Condition). The order likewise states that because the condition precedent went unfulfilled, the contract was never "consummated," a term meaning "completed" or "fully accomplished." *See* *Consummate*, *Black's Law Dictionary* (11th ed. 2019). We read the district court's use of the term "consummated" together with that court's conclusion that the contract was not enforceable to conclude that the district court viewed a contract as having been formed, but the duty to perform under the contract and the right to

enforce performance did not arise because the condition precedent was never satisfied.

**B.      The Financing Contingency Affected All Performance Due Under the Contract**

{13}      Seller next argues that the failure of the condition should not have affected the parties' obligations to perform the other terms of the contract. According to Seller, the financing contingency was limited to the $75,000 down payment and, to the extent it is unenforceable, it is severable from the remainder of the contract. We are unpersuaded in light of the contract's terms and structure.

{14}      The contract called for both parties to perform at closing: Seller's obligation to transfer his shares of stock was to occur in exchange for Purchaser's tender of $75,000. Seller, for his part, has offered no explanation of how or why the sale could be completed in the absence of Purchaser's down payment. Nor has he attempted to reconcile how the $75,000 down payment could be severed in light of the remaining terms of the agreement, including the overall purchase price of $425,000. Because other material parts of the contractual performance were directly impacted by the down payment, we fail to see how the financing contingency can be viewed in isolation. Seller's arguments accordingly do not persuade us that the district court erred in concluding that the contract as a whole was unenforceable as a result of Purchaser not obtaining bank financing.

## C.  Purchaser's Duty to Perform Is Discharged

{15}  Finally, Seller suggests that Purchaser's failure to secure acceptable bank financing constitutes a breach of the contract. This is not the case.

{16}  The nonoccurrence of a condition generally is not itself a breach of the contract. *See Gillespie*, 1989-NMSC-046, ¶ 4 (stating that there is no right to performance and no breach of a contractual duty before the condition precedent occurs). Instead, "the obligor is entitled to suspend performance on the ground that the performance is not due as long as the condition has not occurred." 2 Farnsworth, *supra*, § 8.03 at 8-16. Furthermore, "if a time comes when it is too late for the condition to occur, the obligor is entitled to treat its duty as discharged and the contract as terminated." *Id.*

{17}  In this case, the contract specified the time within which the condition must occur—forty-five days from the execution of the agreement. It is undisputed that this period passed without Purchaser having obtained bank financing that Seller would accept. Because it is too late for the condition to occur, Purchaser was permitted to treat his duty to perform as discharged and the remainder of the contract as no longer enforceable. *See* 2 Farnsworth, *supra*, § 8.03 at 8-17; *see also* Restatement (Second) of Contracts § 225.

{18}  Seller argues that "it would be a perversion of contract law" to allow a party "to breach . . . by failing to perform in order to obtain rescission." This argument

8

mistakes the general nature of a condition, which renders performance conditional until a bargained-for event occurs. Seller has not otherwise offered any developed argument as to why Purchaser's failure to obtain financing amounts to breach. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to rule in the absence of an explanation of the party's argument and facts that would allow this Court to evaluate the claim).

{19}     In sum, the financing contingency constituted a condition precedent to the parties' obligations to perform under the contract. The nonoccurrence of that condition within the time specified in the contract renders the contract unenforceable. We affirm the judgment of the district court.

## II.     Equitable Relief Is Not Available to Seller

{20}     Seller argues that if the contract is unenforceable, the district court erred in denying him equitable relief, either under a theory of unjust enrichment or promissory estoppel. We note that Seller made no request for equitable relief until after trial, and there is no indication that any equitable claims were tried by consent. *See* Rule 1-015(B) NMRA (stating that issues not raised by the pleadings may tried by express or implied consent of the parties). Regardless, Seller has not established any abuse of discretion in the district court's denial of his request. *See Maestas v. Town of Taos*, 2020-NMCA-027, ¶ 10, 464 P.3d 1056.

9

**{21}** Seller's argument on appeal is limited to a brief recitation of factual allegations that, he maintains, support his entitlement to equitable relief. The allegations Seller relies on are neither undisputed nor readily verified, given that he has provided no citations to the record indicating where these matters were raised below. *See* Rule 12-318(A)(4) (stating that arguments in the appellant's brief in chief shall contain citations to the record proper). What is ultimately fatal, however, is that most of Seller's assertions are contradicted by the district court's factual findings, which are binding on appeal because Seller has not challenged them. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298. For example, Seller asserts that he "gave up his entire interest in the business," but fails to address or challenge the district court's finding that "[Seller] never relinquished his shares." Seller also states that "[i]n accordance with the agreement, [he] was not involved in the management of the company at any time after execution," but the district court found Seller had "voluntarily walked away from the management of EZ" the year before the parties entered their agreement. Seller also concedes he did not withdraw completely from the management of the company, as he admits that he withdrew $15,000 from the business's bank account "to pay creditors of EZ Oilfield Services." Seller's assertion that he "substantially changed his position" is not supported by the record and is, in fact, contradicted by the unchallenged findings on appeal.

**{22}** For all of these reasons, we conclude Seller has not established error on the part of the district court with respect to his request for equitable relief.

**CONCLUSION**

**{23}** We affirm.

**{24}** **IT IS SO ORDERED.**

_____
**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**

_____
**JANE B. YOHALEM, Judge**

11